# United States Court of Appeals
## For the First Circuit

_____

No. 99-2343


UNITED STATES OF AMERICA,

Appellee,

v.

JAVIER SANTIAGO,

Defendant, Appellant.

_____


APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]


_____


Before

Torruella, Chief Judge,
Boudin and Lynch, Circuit Judges


_____


Teodor Mendez Lebron, for appellant.
Guillermo Gil, United States Attorney, with whom Jorge E. Vega-Pacheco and Michelle Morales, Assistant United States Attorneys, were on brief, for appellee.


_____


October 6, 2000

————————————————————

**LYNCH, <u>Circuit Judge</u>**.  In this unusual case, a defendant who received the benefit of his plea bargain -- a particular sentence -- but deprived the government of a portion of its benefit -- a safety valve debriefing -- now seeks to overturn the district court's refusal to let him withdraw his plea.  He tried to withdraw his plea when he learned that his co-defendants in this drug conspiracy, whom he considers more culpable, received lesser sentences than his.  He says that he should have been allowed to withdraw his plea, from which he benefitted, because he did not know that he was supposed to cooperate with the government.  We find that the requirements of Rule 11, Fed. R. Crim. P., have been met and affirm the district court's ruling that Santiago failed to show a "fair and just reason" to withdraw his plea. While other aspects of the procedures followed here are troubling, defendant waived any attacks on the procedure and there was, in any event, no plain error.

## I.

On February 5, 1997, Santiago was indicted on a count of narcotics conspiracy in violation of 21 U.S.C. § 846 and two counts of predicate acts under § 841(a)(1).  Over the course of three years, Santiago has been represented by three different court-appointed attorneys.  During Santiago's representation by his first attorney, the parties entered into a binding Rule 11(e)(1)(C) plea agreement under which Santiago would plead guilty to Count 18, possession with intent to distribute 100 kilograms of cocaine, in exchange for a sentence of eighty-seven months.  This was thirty-three months less than the

statutory minimum sentence for the offense of 120 months. The agreement was conditioned on Santiago's meeting the 'safety valve' criteria set forth in U.S.S.G. § 5C1.2.

On December 18, 1997, the district court held a change of plea hearing. After conducting a plea colloquy with Santiago to ensure that his plea was knowing and voluntary, the court accepted Santiago's plea of guilty to Count 18, deferring acceptance of the plea agreement until the court could determine whether Santiago had complied with the safety valve criteria.

Over the next several months, the government sought to debrief Santiago pursuant to his plea agreement, but to no avail. Santiago's sentencing hearing was reset several times, and in August, 1998, Santiago's lawyer both filed what was styled an informative motion that Santiago was contemplating withdrawing his guilty plea and sought leave to withdraw as counsel. On November 6, 1998, the government notified the court that Santiago had failed to comply with the safety valve provision of his plea agreement. The government agreed to try once more to debrief Santiago and report the results to the court. New counsel was appointed for Santiago on November 17, 1998, and sentencing was set for February 11, 1999. Santiago did not file any further motions regarding withdrawing his guilty plea.

On February 11, 1999, finding that Santiago had failed to comply with the safety valve criteria in the second debriefing attempt

by the government, the court issued an order rejecting the specific sentence plea, observing that it "cannot sentence him below the statutory minimum term of 120 months." The court vacated the sentencing hearing and stated that Santiago "is allowed to withdraw his plea of guilty." Santiago's trial initially was set for April 20, 1999, and on Santiago's motion, was reset for May 14.

Thereafter, the court issued a number of orders in anticipation of Santiago's upcoming jury trial. At the same time, Santiago and his second lawyer sought to part ways, and on April 25, 1999, Santiago sent a pro se motion for appointment of new counsel, which was received by the court on April 28, 1999.

Meanwhile, on April 26, 1999, the government filed under seal a motion for the court to sentence Santiago in accordance with his plea agreement, even though he had not complied with the safety valve. The government said it was willing to execute the bargain anyway because Santiago's role was "that of a courier, with limited knowledge of the overall operations of the conspiracy" and because the government had obtained the information it sought, "though not directly provided by the Defendant." The government contended that "there is no reason for the Defendant to withdraw or to be permitted to withdraw from the plea agreement," arguing that the eighty-seven month sentence was "just and appropriate" and that "Defendant has already knowingly and willfully entered a guilty plea to 87 months."

Four days after the government's motion was filed, on April 30, 1999, according to an unelaborated docket entry, the court "accepted" Santiago's guilty plea (despite having allowed him to withdraw his plea) and indicated its intent to sentence him in accordance with his plea agreement.[1] Santiago's second lawyer was permitted to withdraw on June 2, 1999, and new counsel was appointed and made his appearance on June 4, 1999. Once again, Santiago's sentencing hearing was postponed several times, and was finally reset for August 19, 1999.

On the day of his sentencing hearing, Santiago notified the district court of his desire to withdraw his plea of guilty. The court granted Santiago until September 30, 1999 to file a motion for withdrawal of his plea. After Santiago filed his motion and the government responded, the court denied Santiago's motion on October 22, 1999. On November 8, 1999, the court sentenced Santiago to 87 months' imprisonment.

## II.

Santiago appeals the district court's denial of his motion

---

[1] Santiago entered a plea of guilty only once, on December 18, 1997. Contrary to the government's assertion in its brief, Santiago did not plead guilty a second time on April 30, 1999. In response to this court's order requiring the parties to clarify what happened, the government equivocates but implicitly concedes that its contention that Santiago actually pled guilty for a second time was inaccurate. We expect greater candor and care from counsel.

to withdraw his guilty plea.  His primary argument is that his plea was not a knowing and intelligent one as required by Rule 11 because he did not understand what the safety valve provisions required. Santiago also argues that the district court improperly modified his plea agreement by accepting his guilty plea even after it determined that he did not comply with the safety valve provision.  The government contends that Santiago is only now seeking to withdraw his plea because his co-conspirators received lower sentences than he did.

The parties have framed the issues in a particular way and we address those first.  We review for abuse of discretion the district court's finding that Santiago failed to show a "fair and just reason" for withdrawing his plea of guilty.  See U.S. v. Cotal-Crespo, 47 F.3d 1, 5 (1st Cir.), cert denied, 516 U.S. 827 (1995); see also Fed. R. Crim. P. 32(d).[2]

A defendant has no absolute right to withdraw a guilty plea prior to sentencing; rather, he must demonstrate a "fair and just reason" for seeking to withdraw his plea.  See U.S. v. Gonzalez, 202 F.3d 20, 23 (1st Cir. 2000).  In its determination of whether a defendant has shown a sufficient reason for withdrawing his guilty

_____

[2]    Fed. R. Crim. P. 32(d) states in pertinent part: "If a motion to withdraw a plea of guilty . . . is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason."

-7-

plea before sentencing, the court focuses primarily on whether the plea was voluntary, intelligent and knowing within the meaning of the rule governing plea colloquies. See id. at 23. In addition, the district court must consider several other factors: "(1) the plausibility and weight of the proffered reason; (2) the timing of the request; (3) whether the defendant asserted legal innocence; and (4) whether the parties had reached, or breached, a plea agreement." U.S. v. Marrero-Rivera, 124 F.3d 342, 347 (1st Cir. 1997). The court must also consider "any demonstrable prejudice to the government were the defendant allowed to withdraw the plea." Id. at 347.

A reviewing court should set aside a guilty plea if the district court commits an error that "implicate[s] the core concerns of Rule 11, which include the defendant's knowledge of the consequences of the guilty plea." U.S. v. Santo, No. 99-1899, -- F.3d --, 2000 WL 1285391, at *7 (1st Cir. Sept. 15, 2000) (internal quotation marks omitted). Here, the district court complied with the provisions of Rule 11. Before accepting a plea of guilty, the court must address the defendant in open court and ensure that the defendant understands the consequences of pleading guilty, and under Rule 11(d), the court must determine that the plea is voluntary. Further, where there is a plea agreement involved, the court must require disclosure of the agreement before accepting or rejecting it.

-8-

Santiago's primary argument is that he did not understand the consequences of the plea agreement -- in particular, that he would have to have a safety valve debriefing. At the change of plea hearing on December 18, 1997, the court specifically pointed out the safety valve provision of the agreement and asked Santiago if he understood. He said that he did. When at the February 11, 1999 sentencing hearing the court rejected the plea agreement, it did so on the basis of the government's argument that defendant had not complied with his obligations, not that he had not understood his obligations. There is no filing[3] from the defendant saying he did not understand his obligations under the plea agreement's safety valve provision until the September 30, 1999 motion to withdraw his plea. Indeed, after first counsel notified the court on August 10, 1998 that Santiago might want to withdraw his plea at the August 11 sentencing hearing, Santiago apparently did not do so and was ordered by the court to go through a second safety valve debriefing. It was only after he failed to provide adequate information the second time that the government sought to negate the agreement. This sequence makes implausible Santiago's argument that he did not understand his obligations under the agreement.

---

[3] Santiago has failed to provide transcripts of the August 11, 1998 and February 11, 1999 hearings. The burden of omission falls on him and there is no basis to think that the point was made orally. Even if it were, it would not alter the outcome.

The remaining factors in the Rule 32(d) test also support the district court's opinion. First, Santiago's reasons for withdrawing his plea lack merit, for the reasons we discussed. Santiago also complains that his co-conspirators received lower sentences[4] than he did, but a defendant is not entitled to a more lenient sentence based solely on a "perceived need to equalize sentencing outcomes for similarly situated co-defendants." U.S. v. Wogan, 938 F.2d 1446, 1448 (1st Cir.), cert denied, 502 U.S. 969 (1991).

Next, the timing of Santiago's motion is well-beyond that which we have considered legitimate in other cases; indeed, "the longer a defendant waits before moving to withdraw his plea, the more potency his motion must have in order to gain favorable consideration." U.S. v. Gonzalez-Vazquez, 34 F.3d 19, 23 (1st Cir. 1994) (citations omitted) (rejecting withdrawal in part due to four month delay). There are several dates we could use to measure. Even if we take the date most favorable to Santiago, the August 28, 1998 notice from his attorney that he was contemplating withdrawing his plea, it was not timely. Here, Santiago waited about nine months after he entered a guilty plea in 1997 before even suggesting that he

---

[4] The co-defendants' sentences ranged from a low of 30 months for a minor participant, to 60 months for a supervisor. The leader of the conspiracy was sentenced to 121 months. [Defendant's brief at 10]. These defendants pled guilty early, unlike Santiago.

might withdraw it. The nine month lapse between his guilty plea and his notice of contemplated withdrawal of it occurred on the watch of his first attorney. Third, Santiago has not asserted actual innocence. Cf. U.S. v. Ramos, 810 F.2d 308, 312 (1st Cir. 1983).[5] As to the final factor, the government is silent on whether any prejudice would result from withdrawal. On the arguments presented, affirmance is required.

What is more troubling about this case is the posture in which it comes to us. It is fair to read the record as showing that the district court permitted Santiago to withdraw his plea on February 11, 1999 (because the agreement had not been complied with), and the court set the case for trial. On April 26, 1999, the government asked the court to reinstate the plea and the agreement, and mailed the notice to Santiago's counsel. On April 25, 1999, Santiago had mailed a pro se motion seeking appointment of new counsel, which was received by the court on April 28, 1999. On April 30, 1999, without further notice to Santiago or an opportunity for him to be heard, the court reversed positions and "accepted" the plea, which it previously had treated as withdrawn.

_____

[5]     Santiago did, obliquely, claim innocence in his reply to the government's supplemental brief, but otherwise has not asserted actual innocence. Indeed, Santiago's argument in support of his motion to withdraw his guilty plea -- that he was only a minor participant in the conspiracy but received a higher sentence than his co-defendants -- contradicts any assertion of actual innocence.

In another case involving a different underlying issue, such a sequence might lead us to reverse. We do not here for two reasons. The first is that Santiago has never argued, to the district court, or to us, that this procedure is inappropriate. It would, then, be easy to simply view this issue as being waived. See United States v. Gandia-Maysonet, No. 98-1144, 2000 WL 1273845, at *4 (1st Cir. Sept. 13, 2000) (discussing "raise or waive" principle in the context of Rule 11 cases). There is an important point underneath the doctrine of waiver. If Santiago viewed that his plea had been withdrawn as of February 11, 1999 and there was no basis to later "accept" it, he should have raised the point with the district court. He never did, and so the district court was denied any opportunity to cure any procedural problems. Nor did he seek to withdraw the plea at all until five months after the April 30 "acceptance" of his plea. And even then he did not raise these procedural objections. Thus, while he literally filed a motion to withdraw his plea, it was on the grounds we discussed and rejected earlier, and not on these grounds.

As to these grounds, we apply the rule in Gandia-Maysonet, 2000 WL 1273845, at *4 (issues not raised before the trial court treated as forfeited absent showing of plain error in Rule 11 cases), even though Santiago also did not squarely raise the grounds in this court. We will give him the benefit of plain error review. See

-12-

<u>United States</u> v. <u>Olano</u>, 507 U.S. 725, 731-32 (1993) (plain error requires finding by reviewing court of error that not only affects substantial rights but also "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings").  We do so because Santiago glancingly raises the issue, arguing before this court (in one sentence in his brief) that the district court prejudiced defendant by accepting the change in the government's position without giving Santiago a chance to reply, and because we think it better to address the point.

Even if there were procedural error here and it were plain, Santiago's substantial rights have not been affected.  Rule 11 was not violated here, the plea was voluntary, and he got the sentence for which he bargained.  This is not an instance of a defendant receiving a sentence greater than that described to him as to maximum and minimum sentences of which he must be advised.  <u>See</u> <u>United States</u> v. <u>Santo</u>, 2000 WL 1285391, at *7 (finding plain error where court incorrectly advised defendant of applicable mandatory minimum and maximum penalties).  That the government was willing to give him the benefit of his bargain without getting part of its bargain does not infringe on the fairness, integrity, or public reputation of judicial proceedings.

<u>Affirmed</u>.