# United States Court of Appeals
## For the First Circuit

No. 02-2372

UNITED STATES OF AMERICA,

Appellee,

v.

DARNELL A. MOORE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, Chief U.S. District Judge]

Before

Boudin, Chief Judge,
Campbell, Senior Circuit Judge,
and Lynch, Circuit Judge.

Gregory Moffatt, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for appellee.

John H. LaChance for appellant.

March 29, 2004

**LYNCH**, **Circuit Judge**.  Feeling betrayed when he learned that a new, sterner regime in the United States Attorney's Office had rejected an eight-year sentencing recommendation from an Assistant U.S. Attorney in favor of a ten-year recommendation, Darnell Moore fled from his sentencing hearing at the Boston courthouse in July 2002.  While a fugitive, he wrote a pro se letter to the court, asking to withdraw his plea.  He was apprehended on October 2, 2002, and brought before the court on October 9.  Moore's counsel was advised the day before of a court hearing on October 9.  Thinking that the court would schedule a later sentencing hearing, counsel learned instead at the October 9 hearing that the court intended to go forward with sentencing.  Counsel asked for a continuance.  The court would have none of it; it denied both the continuance and a motion to withdraw the plea, and sentenced Moore to eighteen years, in light of his flight.  Moore appeals both the denial of the motion to withdraw and the denial of the continuance.  We affirm, with a cautionary note.

## I.

Darnell A. Moore was charged with two counts of unarmed robbery, in violation of 18 U.S.C. § 2113(a), on July 19, 2000.  He initially pled not guilty and then, on November 28, 2001, entered into a plea and cooperation agreement with the government.  Under the plea agreement, the government agreed (1) to recommend an acceptance-of-responsibility adjustment under U.S.S.G. § 3E1.1 if

Moore accepted responsibility and did not engage in any untruthful or illegal conduct and (2) to recommend a downward departure pursuant to U.S.S.G. § 5K1.1 if Moore provided substantial assistance to the government. The plea agreement did not specify the particular sentence that the government would recommend if Moore rendered substantial assistance; it provided explicitly that "[t]he U.S. Attorney reserves the right to recommend a particular sentence or sentencing range, or to make no recommendation at Defendant's sentencing."

On February 20, 2002, Moore informed the court that he wished to change his plea and proceed to trial. Then, on March 13, 2002, the government returned a superseding indictment that charged Moore with two additional bank robberies. At this point, Moore, who had already run into problems with the first appointed counsel, sought to have his second appointed attorney withdraw as counsel. Moore and his attorney filed motions to that effect, the attorney was allowed to withdraw, and Moore's present attorney was appointed to represent him.

The government agreed to dismiss the superseding indictment after sentencing if Moore pled guilty to the original indictment. At a Fed. R. Crim. P. 11 hearing on May 29, 2002, Moore pled guilty to the original indictment. The district court made the complete inquiry required by Rule 11(b); Moore does not argue otherwise.

During the hearing, the court calculated the applicable guideline range. Moore was determined to be a career offender under U.S.S.G. § 4B1.1(a). The offense statutory maximum for 18 U.S.C. § 2113(a) is twenty years of imprisonment, so Moore was assigned an offense level of 32 under § 4B1.1(b)(C). That offense level was greater than the offense level that would have been applicable to 18 U.S.C. § 2113(a) had Moore not been a career criminal, so it became the relevant offense level pursuant to § 4B1.1(b). The court projected a three-point acceptance-of-responsibility decrease in the offense level under U.S.S.G. §§ 3E1.1(a) and (b), making the final offense level 29. Under § 4B1.1(b), a career offender's criminal history category is VI. The offense level of 29 and the category VI criminal history resulted in an applicable guideline range of 151 to 188 months of imprisonment. U.S.S.G. ch. 5, pt. A. The court's calculation did not account for any downward departure.

The government repeated before the court that it intended to recommend a sentence at the low end of that range. The court advised Moore that under the plea agreement the government was only promising to <u>consider</u> asking the court to decrease the sentence further pursuant to the substantial assistance downward departure motion.[1] The court also explained to Moore that it would be under

_____

[1]    The relevant excerpt from the plea colloquy follows:

Court:                    [O]n this business about substantial

-4-

no obligation to follow the government's recommendation, should the government choose to make one.[2]  Sentencing was scheduled for July 10, 2002, and Moore was permitted to remain on release, subject to conditions, until then.

The day before the July sentencing hearing, Moore was in counsel's office reviewing the presentence report.  While Moore was there, his counsel received a call from the AUSA prosecuting the case, who informed him that his superiors had disagreed with the sentence he was going to recommend to the court in connection with the government's § 5K1.1 departure motion.  The AUSA had recommended 96 months of imprisonment (eight years) to his superiors, and he later acknowledged before the district court that he had "made prior representations [to Moore and counsel] based on

---

assistance, all they're promising to do, be very clear, is consider it.  Consider whether they will ask me to go lower.  They haven't promised to ask me.
Do you know that?

Moore:          Yes, sir.

[2]     The following exchange took place:

Court:          [Y]ou understand that I'm not part of this plea bargain.
Are you clear on that?

Moore:          Yes, sir.

Court:           And that even if they do ask me to go lower, I don't have to.  Do you understand that?

Moore:          Yes.

my best estimate of where I thought our office was going to come out, where my immediate supervisor and my former supervisor thought our office was going to come out."

There was an intervening change in administration, however, and the new U.S. Attorney for Massachusetts and the downward departure committee disagreed with the AUSA's request and decided upon a recommended sentence of 120 months of imprisonment (ten years). The AUSA also stated that he was no longer in a position to agree to Moore's motion to self-report to serve any imposed term of imprisonment. Counsel relayed the bad news to Moore. That same day, the government filed its downward departure motion under seal.[3]

The next day, Moore and his attorney arrived at court at nine o'clock in the morning for the sentencing hearing and learned that the hearing was actually scheduled for two o'clock. Counsel told Moore that he could leave the courthouse and should return just before two o'clock. Moore returned to the courthouse with his girlfriend. He met his counsel and spoke to the AUSA separately. Before entering the courtroom, Moore told counsel that he wanted to say goodbye to his girlfriend. Counsel entered the courtroom

---

[3] In the sealed motion for downward departure, the government recommended moving from the applicable base offense level of 29 (in criminal history category VI) to an offense level of 26 (in category VI). The new offense level translated to a range of 120 to 150 months of imprisonment and the government recommended 120 months.

without Moore and then, when he went back to look for Moore a few minutes later, Moore was nowhere to be found.

The district court postponed the hearing until 3:45, declined to issue a bench warrant for Moore's arrest at that time, and stated that "if we find him this afternoon I'm not going to hold it against him." Moore never showed, so the court issued a bench warrant for his arrest. Counsel and the AUSA expressed to the court their surprise at Moore's absence, given that Moore had met all of his other obligations, and the court indicated that Moore would "be treated with great respect" when brought back into court.

While a fugitive, Moore filed a pro se motion to withdraw his guilty plea; the motion included a claim that he was innocent of the charges. The court denied the motion because Moore was a fugitive and because he still had court-appointed counsel. Moore was arrested by state authorities on October 2, 2002. That day, the government filed a motion under seal seeking to withdraw its § 5K1.1 motion and giving notice of its intent to abrogate the plea agreement. By letter dated October 2, the AUSA notified Moore's counsel that Moore had now committed new crimes, subjecting him to lengthy imprisonment, and that the government had withdrawn its § 5K1.1 motion and would no longer recommend an acceptance-of-responsibility adjustment. On October 7, the prosecution sought and obtained a writ of habeas corpus to return Moore to federal

custody on October 9. The application for the writ said "[a]ppearance is necessary for the purpose of sentencing." The record does not indicate whether Moore's counsel was served with this writ, or if he was, when he received it.

Moore was brought into court on October 9, 2002. His counsel had been given only one day's notice of Moore's court appearance and had not been told that Moore would be sentenced that day. Moore's counsel immediately moved for a continuance, saying that he had not had the opportunity to see his client since Moore had been apprehended and before he saw him at the hearing. The court's response was to ask counsel whether he had been ready to go forward with sentencing on July 10. Counsel acknowledged that he had been so prepared. The court then denied the continuance motion, noting that "[t]he matter was fully prepared, and I see no reason to continue the disposition because it's been delayed." In light of the court's statement, counsel did not press further his reasons for asking for a continuance. At Moore's insistence, counsel next moved to withdraw as Moore's attorney, but the district court convinced Moore that having counsel withdraw was unwise. Then, counsel moved to withdraw Moore's guilty plea. After hearing from both counsel and Moore, the court denied the motion, stating that "[t]he plea as it was entered was knowing, intelligent and voluntary and all accurately explained."

The district court denied the government's motion to withdraw its § 5K1.1 motion but noted that the government was not bound to its earlier sentencing recommendation. Because of Moore's flight, the court refused to grant him an adjustment for acceptance of responsibility. The applicable offense level thus moved from 29 to 32, and the applicable guideline sentencing range became 210 to 262 months of imprisonment.[4] The government recommended a sentence of 262 months based on a number of factors, including the defendant's flight (which violated the conditions of his release order and the plea agreement) and his attempt to evade apprehension after his flight.[5] Moore's attorney recommended a § 5K1.1 departure and a sentence of 151 months. The district court declined to depart downward based on § 5K1.1, telling Moore that "in the exercise of discretion I think you threw it all away when you walked out of here." The court declared Moore a career criminal and imposed a sentence of 216 months of imprisonment (eighteen years), concurrent on the two counts, with three years of supervised release, restitution of $6,166, and a $200 special assessment.

---

[4] A fine range of $17,500 to $175,000, a mandatory special assessment of $200, and restitution of $6,166 were also applicable.

[5] The AUSA also referred to allegations that Moore had committed another bank robbery while in flight, that he had threatened an FBI agent, and that he had gotten into a high-speed car chase. The district court did not factor those allegations into Moore's sentence.

Moore argues that the district court's refusal to grant the motion to withdraw his plea was error. Our review of the denial of the motion to withdraw the guilty plea is for abuse of discretion. United States v. Santiago, 229 F.3d 313, 316 (1st Cir. 2000); United States v. Gonzalez-Vazquez, 34 F.3d 19, 22 (1st Cir. 1994). A defendant bears the burden of demonstrating a "fair and just reason" for seeking to withdraw his plea. Fed. R. Crim. P. 32(d) (2001) (amended 2002).[6] "In its determination of whether a defendant has shown a sufficient reason for withdrawing his guilty plea before sentencing, the court focuses primarily on whether the plea was voluntary, intelligent and knowing within the meaning of the rule governing plea colloquies." Santiago, 229 F.3d at 316-17. In addition, certain factors are often particularly relevant to the motion, including: "the plausibility of the proffered reason, the timing of the attempted retraction, the presence or absence of a protestation of innocence, and whether the circumstances cast serious doubt on the bona fides of the original plea." United States v. Torres-Rosa, 209 F.3d 4, 8-9 (1st Cir. 2000); Santiago, 229 F.3d at 317.

The thrust of Moore's argument is that he should have been able to withdraw his plea because he was misled by the

---

[6]     Moore's plea withdrawal is governed by Fed. R. Crim. P. 32(d) as that rule existed prior to revisions that became effective on December 1, 2002.

government. He maintains that the AUSA prosecuting his case made representations to him and to his counsel that the government was going to recommend a sentence of eight years based upon a § 5K1.1 downward departure. Moore argues that he did not understand that the AUSA's eight-year recommendation could be changed by the U.S. Attorney and the downward departure committee to a ten-year sentence, and that this misunderstanding provided reason to withdraw his plea. Moore is, apparently, a veteran of the state criminal process in which there may be less oversight of recommendations by an individual prosecutor. Moore argues that his situation is unique: He was caught in the middle of administration and policy changes within the U.S. Attorney's Office and those changes led to an allegedly rare occurrence -- the internal rejection of an AUSA's sentencing recommendation. The uniqueness of the situation, he says, establishes a "fair and just reason" for the withdrawal of his plea. There is also a contention that he is innocent, although he admitted his guilt when he entered his plea.

The district court did not abuse its discretion in denying Moore's plea withdrawal motion. Its determination that Moore's plea was "knowing, intelligent and voluntary" is well-supported. The plea colloquy here was well-done, clear, and thorough, and Moore does not raise any challenge to its adequacy. The record shows that Moore was not misled; it was clear that the government had only agreed to consider supporting a downward

adjustment. A change in policy within the United States Attorney's Office was an unlucky break for Moore, "but the fact that a defendant finds himself faced with a stiffer sentence than he had anticipated" certainly does not compel a conclusion that there is a fair and just reason for abandoning a guilty plea. Torres-Rosa, 209 F.3d at 9.

The presence of a claim of innocence in Moore's pro se motion for plea withdrawal is more serious. But he had admitted his guilt and gave no reason in the motion as to why that admission was not accurate. The district court was entitled to discount the claim of innocence. The pro se motion was obviously motivated by the disappointing news that the government's recommended sentence would be ten years rather than eight.

## III.

Moore also argues that the district court should not have denied his motion for a continuance of the sentencing hearing. We review the district court's refusal to continue the sentencing hearing for abuse of discretion. United States v. López-López, 295 F.3d 165, 169 (1st Cir. 2002); United States v. Marrero-Ortiz, 160 F.3d 768, 777 (1st Cir. 1998); United States v. Ottens, 74 F.3d 357, 359-60 (1st Cir. 1996) (there is an abuse of discretion where the court made a serious error of law or had a meaningful lapse of judgment that resulted in substantial prejudice to the movant). The list of factors to consider is open-ended; the inquiry is case-

specific.  Ottens, 74 F.3d at 359-60.  Such factors include the movant's proferred reasons for needing the continuance, the amount of time necessary for effective preparation,[7] the amount of time previously available for preparation, the extent to which the movant has contributed to his predicament, the probable utility of a continuance, the extent of the inconvenience to others of a continuance, and the likelihood of injustice or unfair prejudice to the movant from a denial of a continuance.  Id.

The district court viewed the continuance request as a simple equation -- if Moore's counsel was ready on July 10 to handle sentencing, then, ipso facto, he was ready to handle sentencing on October 9, one day after Moore was taken into custody.  But the circumstances were different on the two dates.  On October 9, Moore faced a much higher potential sentence than he did on July 10.  His flight alone increased the potential for a higher sentence: his acceptance-of-responsibility adjustment was in jeopardy and the government no longer wanted to be bound by the plea bargain or by its § 5K1.1 recommendation.  Moore also sought to withdraw his plea and to explain to the judge that his sense of betrayal had led to his flight.  Counsel stated that he had little time to consult with Moore or to do any work on these issues with

---

[7]     "The focus is on what constitutes a reasonable period of time for preparation, not on defense counsel's subjective satisfaction with his level of preparedness."  Marrero-Ortiz, 160 F.3d at 777 (internal quotation marks omitted).

only a day's notice.  Indeed, counsel represented that he thought that he was appearing in order to set a date for sentencing in light of the government's motion.

One could easily think that it would have been better to grant counsel a short continuance.  Still, that does not make the district court's action an abuse of discretion.  It also does not establish that Moore suffered any prejudice from not getting a continuance.  Concerned about the situation and whether there was prejudice, we pursued this topic with counsel at oral argument and were not able to ascertain any specific prejudice.  In the interim between the sentencing hearing and this appeal, there was ample opportunity to have reflected upon the topic so as to be able to point out to us such specific prejudice, if any, as might have occurred.  None has appeared.

We have also carefully reviewed the record and find no prejudice.  Despite the disadvantages, defense counsel was eloquent on his client's behalf on October 9 and the facts were plain.

As a result, we affirm the sentence imposed.


**Affirmed**.