# United States Court of Appeals
## For the First Circuit

No. 16-1612

DARNELL A. MOORE,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

APPLICATION FOR LEAVE TO FILE A SECOND
OR SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255

Before

Thompson, Kayatta, and Barron,
<u>Circuit Judges</u>.

<u>Inga L. Parsons</u> for petitioner.
<u>Michael A. Rotker</u>, Attorney, U.S. Department of Justice, Criminal Division, Appellate Section, with whom <u>Kenneth A. Blanco</u>, Acting Assistant Attorney General, U.S. Department of Justice, Criminal Division, <u>Trevor N. McFadden</u>, Deputy Assistant Attorney General, U.S. Department of Justice, Criminal Division, <u>William D. Weinreb</u>, Acting U.S. Attorney, and <u>Dina M. Chaitowitz</u>, Assistant U.S. Attorney, Chief, Appellate Division, were on brief, for respondent.

September 13, 2017

**KAYATTA**, **Circuit Judge**.  Darnell Moore seeks to file a successive motion to vacate his federal sentence under 28 U.S.C. § 2255.  Before he can do so, this court must certify that his motion "contain[s] . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h).  The new rule upon which Moore's motion relies, according to Moore, is that announced in Johnson v. United States (Johnson II), 135 S. Ct. 2551 (2015).  Johnson II declared unconstitutionally vague the residual clause in the Armed Career Criminal Act's (ACCA) definition of a "violent felony," see 18 U.S.C. § 924(e)(2)(B)(ii).  The Supreme Court made Johnson II retroactive to cases on collateral review in Welch v. United States, 136 S. Ct. 1257 (2016).  Moore seeks to argue in the district court that the new rule created by Johnson II invalidates the residual clause of the career offender guideline applied at his sentencing, which occurred before United States v. Booker, 543 U.S. 220 (2005), made the guidelines advisory, id. at 245 (opinion of Breyer, J.).  For the following reasons, we grant Moore the certification he requests.

## I.

In July 2000, Darnell Moore was charged with two counts of unarmed bank robbery, in violation of 18 U.S.C. § 2113(a).  See United States v. Moore, 362 F.3d 129, 131 (1st Cir. 2004).  He

pleaded guilty in May 2002. Id. Sentencing occurred in October 2002, id. at 133-34, prior to the Supreme Court's decision in Booker.

The sentencing court concluded that Moore fell under the career offender guideline. Moore, 362 F.3d at 131-32. That guideline applied to defendants who were at least eighteen years old at the time of the offense of conviction, whose offense of conviction was a "crime of violence or a controlled substance offense," and who had "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S. Sentencing Guidelines Manual (U.S.S.G.) § 4B1.1 (U.S. Sentencing Comm'n Nov. 1, 2001). The definition of a "crime of violence" included

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Id. § 4B1.2 (Nov. 1, 2001). Moore had prior convictions in Massachusetts state courts for assault and battery, assault and battery on a corrections officer, breaking and entering during the daytime, and assault with a dangerous weapon. To classify Moore as a career offender, the district court must have concluded that

- 3 -

at least two of these prior convictions satisfied the guidelines' definition of "crime of violence."

The career offender guideline increased Moore's criminal history category to VI and, because the unarmed bank robbery conviction carried a statutory maximum sentence of twenty years, see 18 U.S.C. § 2113(a), increased Moore's offense level to thirty-two. See U.S.S.G. § 4B1.1 (Nov. 1, 2001). Using this offense level and this criminal history category, Moore's mandatory guidelines sentencing range was 210 to 262 months.[1] See Moore, 362 F.3d at 133–34; see also U.S.S.G. Ch. 5, Pt. A (Nov. 1, 2001) (Sentencing Table). The district court sentenced him to 216 months' imprisonment. Moore, 362 F.3d at 134.

In March 2005, Moore filed a motion to vacate his sentence under 28 U.S.C. § 2255. He argued, among other things, that Booker applied retroactively and thus the district court erred by treating the guidelines as mandatory at his sentencing. The district court denied the motion, ruling that Booker did not have retroactive effect. Moore did not appeal that denial.[2]

---

[1] Moore was denied an acceptance of responsibility reduction to his offense level because he had absconded before sentencing. Moore, 362 F.3d at 133–34.

[2] Moore later filed a motion to "Vacate Sentence as Void," apparently under Federal Rule of Civil Procedure 60(b)(4). After that motion was denied and Moore appealed, this court treated his motion as a second § 2255 motion that had been filed without the certification required by § 2255(h), and therefore summarily

- 4 -

In June 2015, the Supreme Court handed down its opinion in Johnson II.  The opinion addressed the ACCA, which mandates the increase of minimum and maximum sentences for certain crimes whenever the defendant has previously been convicted of a "violent felony."  The ACCA's definition of a "violent felony" reads, in relevant part:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that--
>     (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>     (ii) is burglary, arson, or extortion, involves use of explosives, <u>or otherwise involves conduct that presents a serious potential risk of physical injury to another</u> . . . .

18 U.S.C. § 924(e)(2)(B) (emphasis added).

In Johnson II, the Supreme Court held that the clause underlined above, called the "residual clause," was so vague that it violated due process for the ACCA to use it to increase minimum or maximum allowable sentences.  135 S. Ct. at 2557.  The Court's prior opinions had established that the residual clause was to be applied in the following way:  First, a court would identify an "ordinary case" of the crime in question.  Id.  Second, the court would determine whether that ordinary case presented a serious potential risk of physical injury to another, with the level of

---

affirmed the district court's denial of the motion.  See Judgment, United States v. Moore, No. 11-2078 (1st Cir. May 14, 2012).

- 5 -

risk that qualified as "serious" being identified with reference to the level of risk involved in the enumerated offenses (burglary, arson, extortion, or a crime involving the use of explosives). Id.

The Court concluded that this way of analyzing the residual clause "combin[ed] indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony." Id. at 2558. That is, it was unclear both how to identify the "ordinary case" of a crime and how much risk of physical injury to another counted as a "serious potential risk." This compounded indeterminacy "both denie[d] fair notice to defendants and invite[d] arbitrary enforcement by judges." Id. at 2557. The residual clause thereby contravened a central component of due process: "[t]he prohibition of vagueness in criminal statutes," id. at 2556–57, which applies "not only to statutes defining elements of crimes, but also to statutes fixing sentences," id. at 2557.

The question before the Court in Welch was whether Johnson II applied retroactively to cases on collateral review. The first step in answering this question was determining whether Johnson II announced a new rule of constitutional law. "'[A] case announces a new rule . . . when it breaks new ground or imposes a new obligation' on the government." Chaidez v. United States, 568 U.S. 342, 347 (2013) (first alteration in original) (quoting Teague

- 6 -

v. Lane, 489 U.S. 288, 301 (1989) (O'Connor, J., plurality opinion)). "To put it differently, . . . a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." Id. (emphasis omitted) (quoting Teague, 489 U.S. at 301). A holding is only dictated by precedent if "it would have been 'apparent to all reasonable jurists.'" Id. (quoting Lambrix v. Singletary, 520 U.S. 518, 527–528 (1997)). However, "a case does not 'announce a new rule, [when] it [is] merely an application of the principle that governed' a prior decision to a different set of facts." Id. (alterations in original) (emphasis omitted) (quoting Teague, 489 U.S. at 307). The parties in Welch agreed that Johnson II announced a new rule of constitutional law.

A new rule of constitutional law applies retroactively to cases on collateral review only if it is a "substantive rule[]," Welch, 136 S. Ct. at 1264 (emphasis omitted) (quoting Schriro v. Summerlin, 542 U.S. 348, 351 (2004)), or if it is a "watershed rule[] of criminal procedure," id. (quoting Saffle v. Parks, 494 U.S. 484, 495 (1990)). The parties in Welch also agreed that Johnson II was not a watershed rule of criminal procedure. Id. So, the question before the Court in Welch was whether Johnson II announced a substantive rule.

The Court concluded that it did. "A rule is substantive rather than procedural if it alters the range of conduct or the

- 7 -

class of persons that the law punishes." Id. at 1264-65 (quoting Schriro, 542 U.S. at 353). The Court reasoned that "[b]y striking down the residual clause as void for vagueness, [Johnson II] changed the substantive reach of the Armed Career Criminal Act, altering 'the range of conduct or the class of persons that the [Act] punishes.'" Id. at 1265 (second alteration in original) (quoting Schriro, 542 U.S. at 353). Johnson II was a substantive rule because, before that decision, "the [ACCA] applied to any person who possessed a firearm after three violent felony convictions, even if one or more of those convictions fell under only the residual clause." Id. After that decision, by contrast, "'even the use of impeccable factfinding procedures could not legitimate' a sentence based on that clause." Id. (quoting United States v. United States Coin & Currency, 401 U.S. 715, 724 (1971)). Johnson II was not a procedural decision because it "had nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced under the Armed Career Criminal Act," such as by "'allocat[ing] decisionmaking authority' between judge and jury, or regulat[ing] the evidence that the court could consider in making its decision." Id. (quoting Schriro, 542 U.S. at 353).

Moore filed this § 2255 motion in May 2016, which was both after Welch and within one year of Johnson II.[3] He argues that the new rule established in Johnson II and made retroactive by Welch applies directly to the residual clause of the pre-Booker career offender guideline under which he was sentenced. That residual clause is identical to the ACCA residual clause at issue in Johnson II.

While this motion was pending before us, the Supreme Court decided in Beckles v. United States that the identical residual clause employed in the post-Booker advisory guidelines is "not subject to a vagueness challenge under the Due Process Clause." 137 S. Ct. 886, 892 (2017). Beckles's reasoning relied on the conclusion that the post-Booker guidelines "do not fix the permissible range of sentences," id., and therefore "do not implicate the twin concerns underlying vagueness doctrine-- providing notice and preventing arbitrary enforcement," id. at 894. At our request, the parties filed supplemental briefs addressing both Beckles and two recent cases from this circuit that might bear on whether Moore's predicate offenses satisfy other clauses of the crime of violence definition. See United States v. Faust, 853 F.3d 39 (1st Cir.), reh'g denied, 2017 WL 3045957 (1st

---

[3] The motion thus fell within the one-year statute of limitations for filing § 2255 motions. See 28 U.S.C. § 2255(f)(3).

Cir. July 19, 2017); United States v. Tavares, 843 F.3d 1 (1st Cir. 2016), reh'g denied, 849 F.3d 529 (1st Cir. 2017).

**II.**

We next set up the legal lens through which we view Moore's motion, and then explain why that view favors letting Moore litigate his second or successive § 2255 motion.

**A.**

This motion comes to us under the following statutory provision:

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain--
> . . .
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). The cross-referenced section, 28 U.S.C. § 2244, contains several provisions that require this court's consideration of a request for certification of a successive motion to be fast, unreviewable, and limited.

First, "[t]he court of appeals shall grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the motion." Id. § 2244(b)(3)(D). Although we have exceeded this time limitation here, we have previously concluded that it "operates as a guideline, not as an imperative." Rodriguez v. Superintendent, Bay State Corr. Ctr.,

- 10 -

139 F.3d 270, 272–73 (1st Cir. 1998), abrogated in part by Bousley v. United States, 523 U.S. 614 (1998). Nevertheless, the existence of this thirty-day guideline suggests that a request for certification that can only be denied by working through complex issues is a certification request that should likely be granted. See Evans-García v. United States, 744 F.3d 235, 238 (1st Cir. 2014) ("[I]n ruling on certification requests, we often must strive to move more quickly than a full consideration of the merits might reasonably require.").

Second, "[t]he grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." 28 U.S.C. § 2244(b)(3)(E). The unavailability of review for a certification decision counsels greater caution before denying an authorization than before granting one. See Evans-García, 744 F.3d at 239 ("We are cognizant . . . that if we err in granting certification, ample opportunity for correcting that error will remain. Conversely, should we err in denying certification, [the petitioner] will have no opportunity to appeal or seek rehearing en banc."); see also In re Embry, 831 F.3d 377, 382 (6th Cir. 2016) (recognizing that "[a] denial of a motion to authorize a successive petition is unreviewable--not by the en banc court, not by the Supreme Court,"

- 11 -

whereas, "[b]y granting such a motion, even many such motions . . . , we decide nothing with finality").

Third, we may "authorize the filing of a second or successive application only if [we] determine[] that the application makes a prima facie showing that the application satisfies the requirements of this subsection." 28 U.S.C. § 2244(b)(3)(C). Although the statutory language is not pellucid, other circuits have interpreted "the requirements of this subsection" to mean the requirements contained in § 2244(b), including § 2244(b)(1)-(2), even though those subsections only appear to apply to § 2254 motions by their terms. See, e.g., Bell v. United States, 296 F.3d 127, 128 (2d Cir. 2002); Bennett v. United States, 119 F.3d 468, 469 (7th Cir. 1997). Moore has not challenged this consensus. Under this interpretation, the movant must "make[] a prima facie showing," 28 U.S.C. § 2244(b)(3)(C), "that the claim [contained in the successive motion] relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," id. § 2244(b)(2)(A).

A "prima facie showing" at the certification stage is merely "a sufficient showing of possible merit to warrant a fuller exploration by the district court." Rodriguez, 139 F.3d at 272-73 (quoting Bennett, 119 F.3d at 469). When deciding whether to certify a § 2255 motion, "our task is not to decide for certain

- 12 -

whether the petition has merit, but rather to determine whether 'it appears reasonably likely that the application satisfies the stringent requirements for the filing of a second or successive petition.'" Evans-García, 744 F.3d at 237 (quoting Rodriguez, 139 F.3d at 273). Although the standard, thus described, appears quite easy to satisfy, Rodriguez nevertheless contains an admonition that "despite its superficially lenient language, the [prima facie] standard erects a high hurdle." 139 F.3d at 273. Reconciling these seemingly contradictory statements about the nature of the prima facie showing requires close attention to the facts of our prior cases.

Rodriguez addressed a petitioner's successive motion under § 2254 for release from state custody. The petitioner argued that the reasonable doubt instructions at his trial had violated the due process clause under Cage v. Louisiana, 498 U.S. 39 (1990) (per curiam), which held that a reasonable juror could interpret the "moral certainty" language in some reasonable doubt instructions "to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." Id. at 41. In Rodriguez, this court carefully analyzed whether Cage announced a new rule of constitutional law, whether that rule had been made retroactive to cases on collateral review by the Supreme Court, and whether it was previously unavailable. See 139 F.3d at 273-76. We concluded that the rule had not been made retroactive by

- 13 -

the Supreme Court, and we therefore denied certification.  Id. at 276.  Perhaps due to this conclusion, we did not analyze in detail whether the rule would have applied to the instruction given in the petitioner's case.  Instead, we simply noted that in Cage, the Supreme Court held that "some moral certainty instructions 'allow a finding of guilt based on a degree of proof below that required by the Due Process Clause,'" Rodriguez, 139 F.3d at 273 (quoting Cage, 498 U.S. at 41), and that at the petitioner's trial "the jury instructions on reasonable doubt included several statements that likened proof beyond a reasonable doubt to proof to a moral certainty," id.

Evans-García addressed the § 2255 motions of two petitioners, both of whom argued that they had been subject to a mandatory sentence of life without the possibility of parole for a crime committed while under the age of eighteen, in violation of Miller v. Alabama, 567 U.S. 460 (2012).  Evans-García, 744 F.3d at 236.  The government conceded that Miller announced a new rule of constitutional law that applied retroactively to cases on collateral review and that was previously unavailable.  Id. at 238.  We accepted all three concessions, although we paused over the concession about retroactivity.  Id. at 238-40.  We ultimately declined to engage in a "full inquiry" at the certification stage, "even on a purely legal issue such as retroactivity."  Id. at 237.  We noted that

- 14 -

> [w]e generally do not rule on questions--
> whether of fact or of law--until a district
> court has done so, a practice that enhances
> the quality of our decisions both by allowing
> us to consider the district court's analysis
> and by allowing the parties to hone their
> arguments before presenting them to us.

Id. at 237-38 (citation omitted).  As to one of the petitioners, whose sentencing guidelines range under the pre-Booker guidelines was life imprisonment,[4] we certified the petition based on the government's three concessions.  Id. at 236-37, 240.  As to the other petitioner, we denied certification because his guidelines range was 292 to 365 months in prison, from which the district court decided to depart upward to a life sentence.  Id. at 240-41.  Accordingly, "he was not sentenced pursuant to any statute or guideline that mandated a sentence of life without parole," id. at 240, so Miller did not apply to him based on the undisputed facts. We held that "a circuit court should deny certification where it is clear as a matter of law, and without the need to consider contested evidence, that the petitioner's identified constitutional rule does not apply to the petitioner's situation." Id.

Rodriguez and Evans-García establish a consistent approach for analyzing whether to certify a successive motion.

---

[4] In Evans-García, the government apparently made no argument that the pre-Booker guidelines were not sufficiently mandatory for the Miller rule to apply.

The court of appeals should first consider whether, as a legal matter, the petitioner's motion relies on a new rule of constitutional law that has been made retroactive to cases on collateral review by the Supreme Court and that was previously unavailable. If it is clear that one of these questions must be answered in the negative, as was the case in <u>Rodriguez</u>, the court may deny certification on that ground. <u>See</u> 139 F.3d at 274-76. But, if the question is close, as was the case in <u>Evans-García</u>, the court may leave "even . . . a purely legal issue" for the district court to resolve. <u>See</u> 744 F.3d at 237. The court of appeals should then consider the mixed question of whether "the petitioner's identified constitutional rule . . . appl[ies] to the petitioner's situation." <u>Id.</u> at 240. If it is "clear as a matter of law, and without the need to consider contested evidence" that it does not, the court should deny the certification. <u>Id.</u> Otherwise, the court should grant it.

**B.**

Having explained the focused yet tentative nature of the examination called for in evaluating a request to file a second or successive § 2255 motion, we turn next to Moore's motion. Distilled to its essence, his request for relief under § 2255 strikes us as quite straightforward. Moore contends first that <u>Johnson II</u> announced a new rule of constitutional law, which <u>Welch</u> made retroactive. That rule is this: The text of the residual clause,

as employed in the ACCA, is too vague to provide, consistent with due process, a standard by which courts must fix criminal sentences. Moore then simply asks that this new rule be applied directly to another law, the Sentencing Reform Act of 1984 (SRA), Pub. L. No. 98-473, tit. II, ch. II, 98 Stat. 1837, 1987 (codified as amended in scattered provisions of 18 U.S.C. and 28 U.S.C. (2002)), which also used the text of the residual clause, as employed in the ACCA,[5] to provide a standard by which a court fixed his sentence. So distilled, Moore's petition seems to manifest at least a reasonable likelihood that it makes the prima facie showing required for a second or successive motion.

The government balks at this conclusion because a necessary link in Moore's argument on the merits of his motion is establishing that the SRA "fixed" sentences.[6] This proposition,

---

[5] The residual clause of the career offender guideline is identical to the residual clause of ACCA. The only difference between the larger subsections containing these residual clauses, U.S.S.G. § 4B1.2(a)(2) (Nov. 1, 2001) and 18 U.S.C. § 924(e)(2)(B)(ii), is that the former lists "burglary of a dwelling" as an enumerated offense whereas the latter lists just "burglary." The two clauses have also been interpreted in the same way. See, e.g., United States v. Ramírez, 708 F.3d 295, 305–07 (1st Cir. 2013) (using the interpretation of the residual clause described in Johnson II to apply the residual clause of the career offender guideline); United States v. Giggey, 551 F.3d 27, 38–41 (1st Cir. 2008) (holding that the residual clause of the career offender guideline should be interpreted in line with the residual clause of the ACCA).

[6] The government has not argued that we should deny certification because Moore's prior offenses satisfy the force clause of the "crime of violence" definition, as interpreted in

the government argues, would be a new rule of constitutional law, rather than a rule driven solely by the force of <u>Johnson II</u> as precedent. Thus, the government continues, Moore's request for certification must fail for several different reasons. First, one of the new rules of constitutional law that Moore's motion relies upon (as framed by the government) has not been made retroactive by the Supreme Court either directly or by logical implication. <u>See</u> <u>Tyler</u> v. <u>Cain</u>, 533 U.S. 656, 666-67 (2001). Second, on the government's reading, § 2255(h)(2) requires that any new rule of constitutional law be recognized by the Supreme Court, not a lower court. Third, it is inappropriate to recognize a new rule in a certification proceeding.

We are not sufficiently persuaded that we would need to make new constitutional law in order to hold that the pre-<u>Booker</u> SRA fixed sentences. Rather, it is likely that we would need only interpret the pre-<u>Booker</u> SRA; i.e., a statute. Moreover, the question of statutory interpretation we would likely need to address is one that the Supreme Court essentially resolved in <u>Booker</u>, when it ruled that the SRA contained "provisions that ma[d]e the Guidelines binding on district judges." 543 U.S. at 233 (opinion of Stevens, J.); <u>see</u> <u>id.</u> at 234 (describing 18 U.S.C. § 3553(b) as "direct[ing] that the [sentencing] court '<u>shall</u> impose

---

<u>Tavares</u>, 843 F.3d at 9-11, and, by analogy, in <u>Faust</u>, 853 F.3d at 49-51. Thus, we deem this argument waived.

- 18 -

a sentence of the kind, and within the range' established by the Guidelines"); id. at 245 (opinion of Breyer, J.) (excising § 3553(b) and § 3742(e) in order to "make[] the Guidelines effectively advisory"); see also Dillon v. United States, 560 U.S. 817, 820 (2010) ("As enacted, the SRA made the Sentencing Guidelines binding."); Kimbrough v. United States, 552 U.S. 85, 100-01 (2007) ("The Booker remedial opinion . . . sever[ed] and excise[d] the provision of the [federal sentencing] statute that rendered the Guidelines mandatory."). The Booker Court noted that "[b]ecause they are binding on judges, we have consistently held that the Guidelines have the force and effect of laws." 543 U.S. at 234. In light of this precedent, and in light of the fact that the lower end of a guidelines range sentence often exceeds what would have otherwise been the statutory minimum, we find ourselves quite skeptical concerning the government's reliance on recent Eleventh Circuit precedent to contend that the mandatory guidelines "did not alter the statutory boundaries for sentences set by Congress for the crime." In re Griffin, 823 F.3d 1350, 1355 (11th Cir. 2016). Nor does the fact that the Eleventh Circuit so concluded mean that a contrary conclusion would be a new rule of constitutional law. Cf. Butler v. Curry, 528 F.3d 624, 637-38 (9th Cir. 2008) (holding that the mere fact that there were dissents in Cunningham v. California, 549 U.S. 270 (2007), did not mean that the case established a new rule of constitutional law

- 19 -

because, inter alia, one of the dissents argued that the majority misinterpreted the statutory sentencing scheme that it held violated the constitution).  In fact, it would not necessarily be a new rule of constitutional law even if we did disagree on the constitutional issue.  See Beard v. Banks, 542 U.S. 406, 416 n.5 (2004) ("[W]e do not suggest that the mere existence of a dissent suffices to show that the rule is new."); id. at 423 (Souter, J., dissenting) (noting that the majority acknowledges that the "'all reasonable jurists' . . . standard is objective, so that the presence of actual disagreement among jurists . . . does not conclusively establish a rule's novelty"); Wright v. West, 505 U.S. 277, 304 (1992) (O'Connor, J., concurring in the judgment) (similar).

It is true that neither the SRA nor Booker used in relevant context the verb "fix."  But nothing in Johnson II or Beckles suggests that "fix" or "fixes" is a term of art, rather than as a shorthand way of saying that a statutory test, rather than judicial judgment or discretion, mandates the minimum and maximum sentences.  See Beckles, 137 S. Ct. at 894-95; Johnson II, 135 S. Ct. at 2557 (citing United States v. Batchelder, 442 U.S. 114, 123 (1979)).  In short, we see no lack of reasonableness in contending that a statute found to "bind[]" in Booker necessarily "fix[es]" under Johnson II, especially if Moore is able to show that the different contexts in which Booker and Johnson II reached

- 20 -

their respective holdings (procedural trial rights versus due process rights) is ultimately immaterial to the inquiry.

Framed in another way, the government's argument turns on the degree of generality with which we define the rule adopted in Johnson II. Does one describe the rule as being no more than the technical holding that the residual clause as employed in the ACCA is unconstitutionally vague? If so, then arguably only successive § 2255 motions based on the ACCA's residual clause would satisfy § 2255(h)(2). Or, does one describe the rule as being that the text of the residual clause, as employed in the ACCA, is too vague to provide a standard by which courts must fix sentences? If so, then one might reasonably conclude that such a rule could be relied upon directly to dictate the striking of any statute that so employs the ACCA's residual clause to fix a criminal sentence.

Both parties appear to agree that the rule is broader than the technical holding of Johnson II; they just disagree about exactly how far it extends. This agreement makes sense, given that Congress in § 2255 used words such as "rule" and "right" rather than "holding." Congress presumably used these broader terms because it recognizes that the Supreme Court guides the lower courts not just with technical holdings but with general rules that are logically inherent in those holdings, thereby ensuring less arbitrariness and more consistency in our law. Perhaps for

this reason, the government agreed at oral argument that the rule in Johnson II would apply to another statute ("ACCA, Jr.") that mirrored the ACCA but was applied to different underlying crimes. Although the residual clause in the pre-Booker guidelines is not quite ACCA, Jr., on one reading of the relevant statutes, it is not clearly different in any way that would call for anything beyond a straightforward application of Johnson II. Indeed, if one takes seriously, as we must, the Court's description of the pre-Booker guidelines as "mandatory," one might describe the residual clause of the pre-Booker guidelines as simply the ACCA's residual clause with a broader reach, in that it fixed increased minimum and maximum sentences for a broader range of underlying crimes. These observations underline the critical point: Moore's § 2255 motion could succeed even on the government's understanding of the rule created by Johnson II, if under the SRA the pre-Booker guidelines fixed sentences.

For this reason, and for the purposes of deciding Moore's application for leave to file a successive § 2255 motion, we are not sufficiently convinced by the recent decisions of the Fourth and Sixth Circuits concluding that first § 2255 motions that sought to apply Johnson II to the pre-Booker guidelines were outside the statute of limitations for such motions. See United States v. Brown, No. 16-7056 , 2017 WL 3585073, at *3 (4th Cir. Aug. 21, 2017); Raybon v. United States, No. 16-2522, 2017 WL 3470389, at

*1 (6th Cir. Aug. 14, 2017).  Both courts concluded that the §  2255 motions under consideration had not been filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court" and the right asserted had not "been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," 28 U.S.C. § 2255(f)(3), even though the motions had been filed within one year of Johnson II.  See Brown, 2017 WL 3585073, at *5; Raybon, 2017 WL 3470389, at *3.  The opinions reasoned that the right the movants were asserting was not the right recognized in Johnson II because the Supreme Court had only applied that right to the ACCA, and because Beckles clarified that Johnson II did not apply to every provision with the same wording as the ACCA's residual clause. Brown, 2017 WL 3585073, at *4–5; Raybon, 2017 WL 3470389, at *2– 3.  Justice Sotomayor's concurring opinion in Beckles, which stated that the majority opinion "le[ft] open the question" whether Johnson II applied to the pre-Booker guidelines, 137 S. Ct. at 903 n.4 (Sotomayor, J., concurring in the judgment), featured in both Brown, 2017 WL 3585073, at *2, and Raybon, 2017 WL 3470389, at *2. But Beckles did not limit Johnson II to its facts.  Rather, one can fairly and easily read Beckles as simply rejecting the application of the rule of Johnson II to the advisory guidelines because, as a matter of statutory interpretation, those guidelines do not fix sentences.  What Beckles left open, then, was a question

- 23 -

of statutory interpretation concerning how mandatory the SRA made the guidelines before Booker. On this framing, the right Moore seeks to assert is exactly the right recognized by Johnson II.

Turning to what is reasonably viewed as the issue of statutory interpretation at the heart of Moore's attempt to apply the rule of Johnson II, the government points to the possibility of departures under the pre-Booker guidelines, arguing that the SRA did not fix even minimum sentences as much as the ACCA does. Departures, however, were limited in scope, and sentencing courts had little leeway in employing them. See, e.g., United States v. Louis, 300 F.3d 78, 84 (1st Cir. 2002) (holding that the defendant did not qualify for a family ties departure); United States v. Vasquez, 279 F.3d 77, 82 (1st Cir. 2002) (holding that "a district court may not depart downward on the basis that deportable status ostensibly carried with it certain adverse collateral penal consequences"); United States v. Snyder, 136 F.3d 65, 70 (1st Cir. 1998) (holding that disparity between state and federal sentences could not justify a departure); United States v. Dethlefs, 123 F.3d 44, 49 (1st Cir. 1997) (holding that "multiple defendants participating in the entry of guilty pleas, without quite a bit more, cannot constitute the meaningful atypicality that is required to warrant a departure"); United States v. Andrade, 94 F.3d 9, 14-15 (1st Cir. 1996) (holding that disparity between sentences for crack and cocaine could not justify a departure);

United States v. Jackson, 30 F.3d 199, 202–03 (1st Cir. 1994) (holding that the district court's conclusion that a guidelines sentence was excessive, given the defendant's age, could not justify a departure); Reid v. United States, No. 03-CR-30031, No. 16-CV-30111, 2017 WL 2221188, at *4 n.2 (D. Mass. May 18, 2017) (Ponsor, J.) (describing the guidelines prior to Booker as a "rigidly imposed . . . straitjacket"). Indeed, the Supreme Court addressed the significance of departures in Booker. The Court acknowledged that one provision of the SRA

> permit[ted] departures from the prescribed sentencing range in cases in which the judge "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

543 U.S. at 234 (opinion of Stevens, J.) (quoting 18 U.S.C. § 3553(b)(1) (2000)). The Court concluded that § 3553(b)(1) did not save the mandatory guidelines from unconstitutionality:

> At first glance, one might believe that the ability of a district judge to depart from the Guidelines means that she is bound only by the statutory maximum. Were this the case, there would be no [Sixth Amendment] problem. Importantly, however, departures are not available in every case, and in fact are unavailable in most. In most cases, as a matter of law, the Commission will have adequately taken all relevant factors into account, and no departure will be legally permissible. In those instances, the judge is bound to impose a sentence within the Guidelines range.

Id.; see also Pepper v. United States, 562 U.S. 476, 497–98 (2011) (reiterating this reasoning).

There is no suggestion, moreover, that Moore qualified for a departure at the time of his sentencing hearing. See Moore, 362 F.3d at 132–34 (describing how the district court denied the government's motion for a downward departure based on substantial assistance because Moore absconded before sentencing). Thus, it may be appropriate for the district court to consider whether the residual clause of the pre-Booker career offender guideline was void for vagueness only as applied to Moore.

It is true that Beckles declared Johnson II categorically inapplicable to the post-Booker advisory guidelines. But that does not mean that the rule established by Johnson II must always apply to a particular provision in every case or not at all. Beckles held that a feature shared by all the post-Booker guidelines--namely, that they are advisory--rendered them categorically exempt from vagueness challenges. If there is truly a difference in how mandatory the pre-Booker guidelines were from case to case, then it may well be necessary to invalidate the residual clause for those defendants for whom the guidelines fixed sentences but not for others.

We leave it to the district court to decide in the first instance if it is appropriate to consider Moore's vagueness

challenge as applied or categorically and, in either event, whether the pre-Booker guidelines fixed Moore's sentencing range in the relevant sense that the ACCA fixed sentences.

## c.

The government argues, in the alternative, that this court may deny certification for a successive § 2255 motion on the ground of procedural default.  We disagree.

The government has not cited a single case in which a court denied certification of a successive § 2255 motion on the grounds of procedural default.  Instead, it has cited two cases from other circuits holding that a court of appeals may deny authorization where the motion is untimely.  See In re Vassell, 751 F.3d 267, 270–72 (4th Cir. 2014); In re Campbell, 750 F.3d 523, 532 (5th Cir. 2014) (requiring that the motion be clearly untimely).  But see In re McDonald, 514 F.3d 539, 543 (6th Cir. 2008) (adopting the opposite rule).

Whether the Fourth and Fifth Circuits are right on this point or not, the inquiry required for determining whether a claim is timely--i.e., comparing the date of the motion and the date of the Supreme Court opinion it seeks to apply--is nowhere near as complex as the cause and prejudice inquiry required for assessing procedural default.  To require this court to assess procedural default in this gatekeeping proceeding would create even more

tension with Congress's instruction that proceedings of this type be decided quickly.

## D.

We have left much work for the district court. That is by necessity, as the district court is required to redo the very analysis performed in this opinion before entertaining a successive § 2255 motion. See 28 U.S.C. § 2244(b)(4). The district court may also have to grapple with an issue that neither party raised before us: what to do when the transcripts of the sentencing hearing do not reveal whether the defendant's past convictions were deemed crimes of violence under the force clause or under the residual clause. Several courts have recently concluded that defendants in such cases are entitled to resentencing as long as the enhancement may have been due to the residual clause. See, e.g., United States v. Winston, 850 F.3d 677, 682 (4th Cir. 2017); cf. In re Chance, 831 F.3d 1335, 1340 (11th Cir. 2016) (arguing that dicta in an earlier Eleventh Circuit case was "wrong" where it suggested that a movant arguing that Johnson II invalidates the residual clause of 18 U.S.C. § 924(c) must "prove whether or not [he] was sentenced under the residual clause" (citation omitted)). We leave it to the district court to grapple with this issue in the first instance.

## III.

For the foregoing reasons, we <u>certify</u> that Moore's successive motion satisfies 28 U.S.C. § 2255(h)(2).