**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 29, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

BOBBY G. PULLEN,

     Defendant - Appellant.

No. 17-3194

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. Nos. 5:16-CV-04067-JAR and 5:98-CR-40080-JAR-1)**
_____

Daniel T. Hansmeier, Appellate Chief, Kansas Federal Public Defender (Melody Brannon, Federal Public Defender, and Kirk Redmond, First Assistant Federal Public Defender), Kansas City, Kansas, for Defendant - Appellant.

Jared S. Maag, Assistant United States Attorney (Thomas E. Beall, former United States Attorney; Stephen R. McAllister, United States Attorney; and James A. Brown, Assistant United States Attorney, with him on the briefs), Topeka, Kansas, for Plaintiff - Appellee.
_____

Before **McHUGH**, **MORITZ**, and **EID**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

The district court sentenced Bobby G. Pullen as a career offender pursuant to

United States Sentencing Guidelines Manual ("USSG") § 4B1.1 at a time when the

Sentencing Guidelines were mandatory. In 2015, the Supreme Court decided *Johnson v. United States*, 135 S. Ct. 2551 (2015), holding the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii) is unconstitutionally vague. As the residual clause of § 924(e)(2)(B)(ii) is identical in wording to the residual clause of USSG § 4B1.2 (a definitional provision for USSG § 4B1.1), Mr. Pullen, relying on *Johnson*, moved for authorization to file a second or successive 28 U.S.C. § 2255 motion. This court determined Mr. Pullen made a prima facie showing that *Johnson* created a retroactive, new rule of constitutional law applicable to the mandatory Guidelines. The district court, however, concluded *Johnson* did not actually create a new rule applicable to the mandatory Guidelines and dismissed Mr. Pullen's § 2255 motion pursuant to 28 U.S.C. § 2255(h)(2), a provision governing authorization to file a second or successive § 2255 motion. The district court did, however, grant Mr. Pullen a certificate of appealability ("COA").

On appeal, Mr. Pullen argues the district court procedurally erred when it relied on § 2255(h)(2) as the basis for dismissing his § 2255 motion and substantively erred when it determined *Johnson* did not create a new rule applicable to the mandatory Guidelines. As to Mr. Pullen's procedural challenge, our recent decision in *United States v. Murphy*, 887 F.3d 1064 (10th Cir.), *cert. denied*, 2018 WL 3462559 (Oct. 29, 2018), forecloses his argument. With respect to Mr. Pullen's substantive challenge, the Supreme Court has never recognized a void for vagueness challenge to the Guidelines and so *Johnson* neither creates a new rule applicable to the Guidelines nor dictates that any provision of the

2

Guidelines is subject to a void for vagueness challenge. Accordingly, we affirm the district court's judgment.

## I. BACKGROUND

In 1999, a jury convicted Mr. Pullen of one count of possession with intent to distribute 100 kilograms or more of marihuana, or aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), 18 U.S.C. § 2. At sentencing, the district court established a total offense level of thirty-four and a criminal history category of VI. The offense level and criminal history category resulted from application of the career offender provision of USSG § 4B1.1 (1998). Application of the career offender provision rested in part on a prior Missouri conviction for escape. Under the offense level and criminal history category compelled by the career offender provision, the presentence investigation report set Mr. Pullen's Guidelines range at 262 to 327 months' imprisonment. The district court sentenced Mr. Pullen to 262 months' imprisonment. Absent designation as a career offender, Mr. Pullen's Guidelines range would have been 92 to 115 months' imprisonment.

In 2006, Mr. Pullen filed his first motion under 28 U.S.C. § 2255, which the district court dismissed as untimely. *United States v. Pullen*, No. 98–40080–JAR, 2006 WL 1133232, at *1 (D. Kan. Apr. 21, 2006). In 2015, the Supreme Court decided *Johnson*, relying on the void for vagueness doctrine to invalidate the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii). *See* 135 S. Ct. at 2563. This residual clause is part of the Armed Career Criminal Act ("ACCA"), which enhances the statutory mandatory minimum for certain defendants who have three or more previous

3

convictions "for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). Section 924(e)(2)(B)(ii) defines "violent felony" to include an offense that "is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." (emphasis added). The clause emphasized above is the residual clause invalidated in *Johnson*. Importantly, the residual clause of § 924(e)(2)(B)(ii) is identical to the residual clause in USSG § 4B1.2, which defined "crime of violence" for purposes of the career offender guideline as an offense that "is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." USSG 4B1.2(a)(2) (emphasis added).

Within one year of the decision in *Johnson*, Mr. Pullen, relying on 28 U.S.C. § 2255(h)(2) and arguing *Johnson* created a new rule of constitutional law applicable to the mandatory Guidelines, filed a motion in this court for authorization to file a second or successive § 2255 motion. We granted the motion for authorization and Mr. Pullen filed his § 2255 motion in district court. The Government filed a response in which it conceded Mr. Pullen's Missouri escape conviction qualified as a "crime of violence" only under the residual clause of USSG § 4B1.2(a)(2) but argued, in part, that (1) *Johnson* did not create a new rule applicable to the mandatory Guidelines; (2) a rule allowing void for vagueness challenges to the Guidelines would be a new rule that the Supreme Court had not yet recognized; and (3) Mr. Pullen's motion was, therefore, untimely for purposes of 28 U.S.C. § 2255(f).

4

The district court focused its analysis on § 2255(h)(2)'s requirement that Mr. Pullen's motion be based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." *See* ROA at 184 (quoting § 2255(h)(2)). The district court concluded Mr. Pullen's motion was untimely and did not satisfy § 2255(h)(2) because relief was premised on the void for vagueness doctrine applying to the Guidelines but neither *Johnson* nor any other Supreme Court case has recognized a void for vagueness challenge to the Guidelines. Thus, the district court, relying on § 2255(h)(2), dismissed Mr. Pullen's motion.

The district court, however, granted Mr. Pullen a COA. In pertinent part, the COA reads: "Here, the Court concludes that reasonable jurists could debate whether the Court was correct in its ruling. The Court thus grants a COA on the issue of whether Mr. Pullen's motion falls within the scope of 28 U.S.C. § 2255(h)(2)." ROA at 187. In his opening brief, Mr. Pullen focuses on the § 2255(h)(2) nature of the dismissal, arguing this provision is directed at the circuit court's authority to grant a prisoner authorization to file a second or successive § 2255 motion and, once a circuit court grants authorization, the district court may not dismiss the motion pursuant to § 2255(h)(2).[1] In its response brief, the Government argues a grant of authorization by a circuit court only preliminarily certifies that the movant satisfied the preconditions for a second or successive § 2255

---

[1] Mr. Pullen moved for leave to file a pro se opening brief. Because Mr. Pullen is represented by counsel, we deny his motion. *See United States v. McDermott*, 64 F.3d 1448, 1450 n.1 (10th Cir. 1995) (declining to consider issues raised in pro se brief based on "policy of addressing on direct appeal only those issues raised by counsel").

motion and that the district court has a secondary gatekeeping role to assure the motion does, in fact, satisfy § 2255(h)(2). The Government further argues the district court correctly concluded *Johnson* did not create a retroactive, new rule applicable to the mandatory Guidelines.

After briefing concluded, several key developments occurred in the law surrounding *Johnson*. First, the Supreme Court issued its decision in *Sessions v. Dimaya*, holding application of *Johnson* resulted in the conclusion that 18 U.S.C. § 16(b)—which is similarly, but not identically, worded to the residual clause of § 924(e)(2)(B)(ii)—was unconstitutionally vague. 138 S. Ct. 1204 (2018). Second, the Supreme Court denied certiorari petitions in several cases where circuit courts rejected § 2255 *Johnson*-based challenges to the residual clause in USSG § 4B1.2. *See, e.g.*, *Raybon v. United States*, 138 S. Ct. 2661 (2018); *Lester v. United States*, 138 S. Ct. 2030 (2018). Third, several other circuit courts addressed whether *Johnson* created a retroactive, new rule applicable to the residual clause of USSG § 4B1.2. *See United States v. Blackstone*, 903 F.3d 1020, 1025–28 (9th Cir. 2018) (holding Supreme Court has yet to announce rule that mandatory Guidelines are susceptible to void for vagueness challenge); *Russo v. United States*, 902 F.3d 880, 882–84 (8th Cir. 2018) (denying § 2255 relief and holding prisoner was not asserting a right based on *Johnson* because reasonable minds could debate whether *Johnson* announced a new rule of constitutional law applicable to the mandatory Guidelines); *United States v. Green*, 898 F.3d 315, 319–23 (3d Cir. 2018) (holding § 2255 motion untimely because *Beckles v. United States*, 137 S. Ct. 886 (2017), favors conclusion *Johnson* did not create new rule applicable to mandatory Guidelines and that

6

issue remains open); *Cross v. United States*, 892 F.3d 288, 299–306 (7th Cir. 2018) (holding *Johnson* created new rule applicable to all vague, mandatory residual clauses that enhance punishment such that § 2255 relief from sentence imposed under mandatory Guidelines scheme was proper).

In the midst of these developments, we ordered the parties to submit simultaneous supplemental briefs. In his supplemental brief, Mr. Pullen argues *Dimaya* teaches us that *Johnson* created a new rule that applies beyond 18 U.S.C. § 924(e)(2)(B)(ii).[2] And Mr. Pullen articulates the new rule from *Johnson* as a

> due process right not to have a statutory penalty range fixed by a provision that defines a prior conviction as one involving "conduct that presents a serious potential risk of physical injury to another," and that uses an ordinary-case categorical approach to measure whether the conviction is sufficiently risky to count under the provision.

Pullen Supp. Br. at 5–6 (not identifying source of quotation). The Government argues neither *Dimaya* nor *Johnson* addressed the constitutionality of a Guidelines provision or whether the void for vagueness doctrine applies to the Guidelines. Rather, the Government argues, *Beckles* provides the best guidance on whether *Johnson* created a new rule relative to the mandatory Guidelines. The majority opinion in *Beckles* rejected a *Johnson*-based challenge to the advisory Guidelines and Justice Sotomayor, in a concurrence, indicated that *Johnson*'s applicability to the mandatory Guidelines "remains an open question." Gov. Supp. Br. at 5. The Government

---

[2] Out of concern that his counsel might not have filed a supplemental brief, Mr. Pullen moved to file a pro se supplemental brief. As Mr. Pullen is represented by counsel and his counsel did file a supplemental brief, we deny Mr. Pullen's motion. *See McDermott*, 64 F.3d at 1150 n.1.

theorizes that if the question remains open, *Johnson* does not create a new rule applicable to the mandatory Guidelines because, if a question is "expressly left open, then the right, by definition, has not been recognized." *Id.* at 5–6 (quoting *United States v. Brown*, 868 F.3d 297, 299 n.1 (4th Cir. 2017), *cert. denied*, 139 S. Ct. 14 (2018)).

Finally, subsequent to oral argument, the Supreme Court, over a two justice dissent, denied certiorari petitions in a second set of cases where circuit courts denied § 2255 motions raising *Johnson*-based challenges to the residual clause of USSG § 4B1.2, as applied when the Guidelines were mandatory. *Brown v. United States*, 139 S. Ct. 14 (2018); *see Gipson v. United States*, 2018 WL 1993703 (Oct. 15, 2018); *Lewis v. United States*, 2018 WL 3094227 (Oct. 15, 2018); *Greer v. United States*, 2018 WL 2087987 (Oct. 15, 2018); *Wilson v. United States*, 2018 WL 2064772 (Oct. 15, 2018); *Molette v. United States*, 2018 WL 1640168 (Oct. 15, 2018); *Homrich v. United States*, 2018 WL 2364812 (Oct. 15, 2018); *Chubb v. United States*, 2018 WL 3024068 (Oct. 15, 2018); *Smith v. United States*, 2018 WL 3024136 (Oct. 15, 2018); *Buckner v. United States*, 2018 WL 3024166 (Oct. 15, 2018);[3] *see also Robinson v. United States*, 2019 WL 113550 (Jan. 7, 2019); *Garrett v. United States*, 2018 WL

---

[3] Footnote 1 of the dissent from the denial of certiorari in *Brown v. United States* indicates that the dissent also applies to the other nine orders denying certiorari that issued on October 15, 2018. 139 S. Ct. 14, 14 n.1 (2018) (Sotomayor, J., dissenting from denial of certiorari). Where Justice Ginsburg joined the dissent in *Brown* in full and without reservation, we interpret footnote 1 as indicating that Justice Ginsburg dissented from the other nine denials of certiorari issued on October 15, 2018, even though the orders in those denials do not specifically identify Justice Ginsburg as dissenting.

3660076 (Dec. 3, 2018); *Bowens v. United States*, 2018 WL 5113456 (Nov. 19, 2018); *Callins v. United States*, 2018 WL 4932460 (Nov. 13, 2018).

## II. STANDARD OF REVIEW

"Where, as here, the district court does not hold an evidentiary hearing, but rather denies the motion as a matter of law . . . our review is strictly de novo." *United States v. Barrett*, 797 F.3d 1207, 1213 (10th Cir. 2015) (quotation marks omitted). Further, "[w]e are not bound by the district court's reasoning and may affirm on any ground adequately supported by the record." *United States v. Greer*, 881 F.3d 1241, 1244 (10th Cir. 2018), (internal quotation marks omitted) *cert. denied* 2018 WL 2087987; *see Grossman v. Bruce*, 447 F.3d 801, 805 n.2 (10th Cir. 2006) ("[W]e are free to affirm [the denial of 28 U.S.C. § 2241 relief] on any ground for which there is a sufficient record to permit conclusions of law.").

## III. DISCUSSION

### A. *Threshold Requirement for Second or Successive § 2255 Motion*

Although prisoners who have not filed a prior § 2255 motion may file such a motion directly in the district court, a prisoner who filed a prior § 2255 motion must obtain authorization from a circuit court judge prior to filing the motion in district court. *See* 28 U.S.C. § 2244(a); *see also id.* § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."). Section 2255(h) of Title 28 sets out the requirements for authorization and states, in pertinent part:

9

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—
>
> . . .
>
> > (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

To obtain authorization to file a second or successive § 2255 motion, a movant relying on a new rule of constitutional law must make a prima facie showing to the circuit court that he satisfies the § 2255(h)(2) requirements. 28 U.S.C. § 2244(b)(3)(C).

## B. *Secondary Requirement for Second or Successive § 2255 Motion*

Having concluded that Mr. Pullen made a prima facie showing to the circuit court that he satisfies the § 2255(h)(2) requirements, we next consider whether the district court possessed the authority to deny Mr. Pullen relief and dismiss his § 2255 motion pursuant to § 2255(h)(2) after the circuit court certified his prima facie compliance. Our recent decision in *Murphy* controls our analysis.

As discussed, "[u]nder § 2255(h)(2), a second or successive [§ 2255] motion must be certified—as provided in 28 U.S.C. § 2244—by a court of appeals to contain a previously unavailable new rule of constitutional law that the Supreme Court has made retroactively applicable to cases on collateral review." *Murphy*, 887 F.3d at 1067. In turn, § 2244(b)(3) instructs that "to receive certification, a motion *need only make a prima facie showing* that it satisfies § 2255's criteria." *Id.* (emphasis added). Because § 2244(b)(3) requires only a prima facie showing for certification by the court of appeals, certification amounts to only a "preliminary" determination that the

10

second or successive § 2255 motion contains a claim based on a new rule of constitutional law made retroactive on collateral review by the Supreme Court. *Id.* The "preliminary" nature of this determination means the movant must pass through a second procedural gate once in district court: "[P]ursuant to § 2244(b)(4), once the court of appeals grants authorization, the district court must determine whether the petition does, in fact, satisfy the requirements for filing a second or successive motion before the merits of the motion can be considered." *Id.* (internal quotation marks omitted). In summation, the two procedural gates a prisoner must pass through before obtaining review of the merits of a second or successive § 2255 motion are:

(1) a prima facie showing to the court of appeals that the motion satisfies the requirements of § 2255(h), defined as "a sufficient showing of possible merit to warrant a fuller exploration by the district court" and

(2) a determination by the district court that the petition does, in fact, satisfy those requirements.

*Id.* at 1068 (quoting *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997)).

In accord with this two-gate approach, the district court was required to analyze whether Mr. Pullen's § 2255 motion actually relied on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court" as required by § 2255(h)(2) and § 2244(b)(4). Concluding that Mr. Pullen's § 2255 motion did not actually rely on a new rule of constitutional law applicable to the mandatory Guidelines, the district court relied on § 2255(h)(2) to dismiss the motion.

With these requirements in mind, we discuss the history of the Sentencing

Guidelines and of *Johnson* and its progeny before turning to the issue of whether the

district court correctly determined that Mr. Pullen cannot actually satisfy the

requirements of § 2255(h)(2). *See* 28 U.S.C. § 2244(b)(4). That is, whether his

motion relies on a new rule of constitutional law already decided and deemed

retroactively applicable by the Supreme Court.

### C. *Legal Background*

**1. History of the Guidelines**

In 1984, Congress authorized the United States Sentencing Commission to

promulgate the Sentencing Guidelines. *Mistretta v. United States*, 488 U.S. 361, 362

(1989). Prior to the adoption of the Guidelines, the often expansive statutory

minimum and maximum penalties for an offense served as the only constraint on a

federal judge's discretion at sentencing. *Id.* at 364 (describing the pre-Guidelines

sentencing scheme as one where "Congress delegated almost unfettered discretion to

the sentencing judge to determine what the sentence should be within the customarily

wide range so selected"). One of the primary purposes behind the creation of the

Guidelines was to "promote uniformity and proportionality in sentencing" across the

country. *United States v. Jackson*, 921 F.2d 985, 988 (10th Cir. Dec. 17, 1990) (en

banc). And in passing the Sentencing Reform Act of 1984, Congress intentionally

"settl[ed] on a mandatory-guideline system," rather than an advisory system.

*Mistretta*, 488 U.S. at 367.

Codifying the generally mandatory nature of the Guidelines, Congress enacted

18 U.S.C. § 3553(b)(1), which states, in pertinent part:

> Except as provided in paragraph (2), the court *shall impose a sentence of the kind, and within the range*, [produced by the Guidelines] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.

(emphasis added). In 2005, the Supreme Court struck down the above-quoted

statutory provision, concluding the Sixth Amendment precluded a sentencing judge

from finding facts that effectively increased a defendant's punishment where those

facts had not been found by a jury or admitted by the defendant as part of a guilty

plea. *United States v. Booker*, 543 U.S. 220, 244 (2005).[4] In reaching this conclusion,

the Court held the Guidelines acted like a statute because a sentencing judge's ability

to depart from the Guidelines range was so strictly limited that the Guidelines range

drove a defendant's sentence in the vast majority of cases. *Id.* at 234. To solve the

constitutional problem with a mandatory-Guidelines scheme, the Supreme Court

severed the portion of the Sentencing Reform Act of 1984 that made the Guidelines

---

[4] Despite *Booker*'s statement about judicial factfinding at sentencing violating the Sixth Amendment, an exception to this general prohibition exists where the district court makes factual findings regarding a defendant's prior criminal history. *See Apprendi v. New Jersey*, 530 U.S. 466, 496 (2000).

mandatory, transforming the Guidelines into their present-day, advisory form. *Id.* at

265; *see also id.* at 245–60.

**2. *Johnson* and its Progeny**

In 2015, the Supreme Court addressed the constitutionality of 18 U.S.C.

§ 924(e)(2)(B). Section 924(e)(2)(B) defined "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year
> . . . that—
>   (i)  has as an element the use, attempted use, or threatened use of
>        physical force against the person of another; or
>  (ii)  is burglary, arson, or extortion, involves use of explosives, *or*
>        *otherwise involves conduct that presents a serious potential*
>        *risk of physical injury to another*

(emphasis added). In *Johnson*, the Court concluded the emphasized language, known

as the residual clause, was void for vagueness because "the indeterminacy of the

wide-ranging inquiry required by the residual clause both denies fair notice to

defendants and invites arbitrary enforcement by judges." 135 S. Ct. at 2557; *see id.* at

2556 (identifying "fail[ure] to give ordinary people fair notice of the conduct it

punishes" and being "so standardless that it invites arbitrary enforcement" as two

bases for finding statute unconstitutionally vague). *Johnson*, however, limited its

holding to the residual clause of § 924(e)(2)(B)(ii). *See id.* at 2563 ("Today's

decision does not call into question application of the [ACCA] to the four enumerated

offenses, or the remainder of the [ACCA's] definition of a violent felony."); *see also*

*Greer*, 881 F.3d at 1248 ("[T]he only right recognized by the Supreme Court in

*Johnson* was a defendant's right not to have his sentence increased under the residual

clause of the ACCA.").

14

In the aftermath of *Johnson*, courts were flooded with challenges, both on direct appeal and under § 2255, to convictions or sentences supported by § 924(e)(2)(B)(ii) or other provisions resembling § 924(e)(2)(B)(ii). A trio of Supreme Court cases shape the state of the law post-*Johnson*. First, in *Welch v. United States*, the Court held *Johnson* announced a new rule of constitutional law that applied retroactively to cases on collateral review. 136 S. Ct. 1257, 1264–65 (2016). Although *Welch* never explicitly states the rule from *Johnson*, the majority opinion suggests the rule was limited to the ACCA. *See id.* at 1265 ("By striking down the residual clause as void for vagueness, *Johnson* changed the substantive reach of the Armed Career Criminal Act, altering the range of conduct or the class of persons that the [Act] punishes . . . . The residual clause is invalid under *Johnson*, so it can no longer mandate or authorize any sentence. *Johnson* establishes . . . that even the use of impeccable factfinding procedures could not legitimate a sentence based on that clause." (internal quotation marks omitted)). *But see id.* at 1272 (Thomas, J., dissenting) ("*Johnson*'s new constitutional rule is that a law is unconstitutionally vague if it 'requires a court to picture the kind of conduct that the crime involves in "the ordinary case," and to judge whether that abstraction presents a serious potential risk,' of some result." (quoting *Johnson*, 135 S. Ct. at 2557)).

Second, in *Beckles*, the Court addressed whether the residual clause of USSG § 4B1.2 of the advisory Guidelines was susceptible to a void for vagueness challenge

similar to the challenge that prevailed in *Johnson*.[5] *See* 137 S. Ct. at 890. Because the residual clause of USSG § 4B1.2(a)(2) was identical to the language held void for vagueness in *Johnson*, several circuit courts, including this court, concluded the rule from *Johnson* necessitated the invalidation of the residual clause in § 4B1.2(a)(2) within the context of the advisory Guidelines. *See United States v. Pawlak*, 822 F.3d 902 (6th Cir. 2016); *United States v. Hurlburt*, 835 F.3d 715 (7th Cir. 2016) (en banc); *United States v. Madrid*, 805 F.3d 1204 (10th Cir. 2015). *But see United States v. Matchett*, 802 F.3d 1185 (11th Cir. 2015) (rejecting void for vagueness challenge to advisory Guidelines).

In *Beckles*, the Supreme Court rejected the position that the advisory Guidelines were susceptible to the rule from *Johnson* or a void for vagueness

---

[5] Recall that USSG § 4B1.2 defined "crime of violence" as:

[A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
  (1)   has as an element the use, attempted use, or threatened use of physical force against the person of another, or
  (2)   is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

USSG § 4B1.2(a) (1998–2015) (emphasis added). The emphasized language is the residual clause that was at issue in *Beckles v. United States*, 137 S. Ct. 886 (2017), and is at issue in this case. In 2016, the Sentencing Commission passed an amendment to the Guidelines adding several enumerated offenses to subsection (2) and removing the residual clause of the subsection. USSG Supp. to App. C., Amend 798 at 131 (Nov. 1, 2016) ("Amendment 798"). Amendment 798, however, has no bearing on Mr. Pullen's case as the Amendment does not apply retroactively. *See* USSG § 1B1.10(d) (listing amendments that apply retroactively).

16

challenge. 137 S. Ct. at 894–95. In so holding, the Court observed it had "invalidated two kinds of criminal *laws* as 'void for vagueness': laws that *define* criminal offenses and *laws* that *fix the permissible sentences* for criminal offenses." *Id.* at 892 (first and third emphases added). The *Beckles* Court further observed that "'*statutes* fixing sentences' must specify the range of available sentences with 'sufficient clarity,'" *id.* (emphasis added) (first quoting *Johnson*, 135 S. Ct. at 2557, then quoting *United States v. Batchelder*, 442 U.S. 114, 123 (1979)), and that "[b]y specifying 'the *range* of penalties that prosecutors and judges may seek and impose,' Congress ha[s] 'fulfilled its duty'" to craft a law that comports with due process, *id.* at 893 (quoting *Batchelder*, 442 U.S. at 126). The Court then distinguished the advisory Guidelines, which "do not fix the permissible range of sentences," from the "statute" at issue in *Johnson*, which did "fix[] permissible sentences." *Id.* at 892. From this, the Court concluded "[t]he advisory Guidelines . . . do not implicate the twin concerns underlying [the] vagueness doctrine—providing notice and preventing arbitrary enforcement." *Id.* at 894. As to the first of these concerns, "[a]ll of the notice required is provided by the applicable statutory range, which establishes the permissible bounds of the court's sentencing discretion." *Id*. Along those lines, the Court stated, "[t]he Guidelines . . . do not regulate the public by prohibiting any conduct or by 'establishing minimum and maximum penalties for any crime.'" *Id.* at 895 (quoting *Mistretta*, 488 U.S. at 396).

The majority opinion in *Beckles*, however, indicated that the second concern of the void for vagueness doctrine—preventing arbitrary enforcement—was ameliorated

17

by the advisory nature of the Guidelines post-*Booker* and the sentencing judge's

discretion to impose a sentence anywhere within the statutory range. *Id.* The

distinction between the discretion afforded sentencing judges under the advisory

Guidelines, compared to the mandatory Guidelines, caught the attention of Justice

Sotomayor, whose concurrence stated:

> The Court's adherence to the formalistic distinction between mandatory
> and advisory rules at least leaves open the question whether defendants
> sentenced to terms of imprisonment before our decision in *United States
> v. Booker*, 543 U.S. 220 (2005)—that is, during the period in which the
> Guidelines *did* "fix the permissible range of sentences"—may mount
> vagueness attacks on their sentences. That question is not presented by
> this case and I, like the majority, take no position on its appropriate
> resolution.

*Id.* at 903 n.4 (Sotomayor, J. concurring in the judgment) (citations omitted).

Third, in *Dimaya*, the Supreme Court relied on the void for vagueness doctrine

to strike down 18 U.S.C. § 16(b)'s definition of crime of violence, a provision the

Court described as "similarly worded" to the residual clause struck down in *Johnson*.

*Dimaya*, 138 S. Ct. at 1210. In so holding, the opinion of the Court made three

statements potentially important to determining the scope of the new rule from

*Johnson*. First, *Dimaya* indicated its ruling was a product of "adhering" to the

analysis set forth in *Johnson*. *Id*. Second, *Dimaya* called *Johnson* "a straightforward

decision, with equally straightforward application here" such that the "reasoning" of

*Johnson* "effectively resolved the [issue] before" the Court in *Dimaya*.[6] *Id.* at 1213.

---

[6] Notably, *Dimaya* could have, but did not, state that any "rule" from *Johnson*
"dictated" a result in *Dimaya*. *Cf. Russo v. United States*, 902 F.3d 880, 883 (8th Cir.

Finally, *Dimaya* compared § 16(b) and § 924(e)(2)(B)(ii), stating that both statutes "'require[] a court to picture the kind of conduct that the crime involves in "the ordinary case" and to judge whether that abstraction presents' some not-well-specified-yet-sufficiently-large degree of risk." *Id.* at 1216 (quoting *Johnson*, 135 S. Ct. at 2556–57). Under this analytical framework, *Dimaya* concluded "§ 16(b) produces, just as the ACCA's residual clause did, 'more unpredictability and arbitrariness than the Due Process Clause tolerates.'" *Id.* at 1216 (quoting *Johnson*, 135 S. Ct. at 2558).

## D.     *Analysis*

Based on *Johnson* and its progeny, Mr. Pullen describes the new and retroactive rule from *Johnson* as a right not to be sentenced under an ordinary-case categorical approach requiring a judge to picture conduct of the crime and predict whether that conduct presents a sufficiently large degree of risk. Before considering the rule Mr. Pullen advances, we pause to address the iterations of the rule by this court and others. We then turn to the formulation of the rule endorsed by Mr. Pullen, ultimately deciding it does not permit relief on a second or successive § 2255 claim challenging the mandatory Guidelines because the Supreme Court has not yet

---

2018) (quoting *Teague v. Lane*, 489 U.S. 288, 301 (1989), for proposition that "[a] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final" and concluding that any rule relative to the mandatory Guidelines would be a new rule because the rule "is not dictated by *Johnson*").

19

announced a rule with respect to the mandatory Guidelines. Thus, we agree with the district court that Mr. Pullen's motion does not actually satisfy § 2255(h)(2).

## 1. Decisions Defining the Rule Announced in *Johnson*

Several circuit court decisions, including our own decision in *Greer*, have stated the new rule created by *Johnson* as "a defendant's right not to have his sentence increased under the residual clause of the ACCA."[7] *Greer*, 881 F.3d at 1248; *see also Green*, 898 F.3d at 321 ("[I]n light of *Beckles*, *Johnson*'s holding as to the residual clause in the ACCA created a right only as to the ACCA, and not a broader right that applied to all similarly worded residual clauses, such as that found in the advisory Sentencing Guidelines."); *Brown*, 868 F.3d at 303 ("*Johnson* only recognized that ACCA's residual clause was unconstitutionally vague."). If this phrasing of the new rule from *Johnson* is correct, Mr. Pullen is not entitled to proceed on his § 2255 motion because his Guidelines range was increased as a result of application of USSG § 4B1.1 and the residual clause of USSG § 4B1.2(a)(2) of the mandatory Guidelines and not the residual clause of the ACCA.

The Seventh Circuit, the only circuit to grant relief to a § 2255 movant relying on *Johnson* to challenge USSG §§ 4B1.1, 1.2 of the mandatory Guidelines, has expressed the new rule from *Johnson* as "a right not to have his sentence *dictated* by

---

[7] The narrowness of that statement of the rule from *Johnson* has been called into question by *Dimaya*'s application of the rule to a statutory context outside of the ACCA—albeit on direct review. But we need not define the precise boundaries of the rule today because Mr. Pullen's attempt to apply *Johnson* to the mandatory Guidelines fails even under his more expansive statement of that rule.

the unconstitutionally vague language of the mandatory residual clause." *Cross*, 892 F.3d at 294; *see Blackstone*, 903 F.3d at 1027 (identifying quoted language from *Cross* as Seventh Circuit's statement of new right from *Johnson*). But the Ninth Circuit has concluded that the Seventh Circuit's proposed rule is phrased at such a high level of generality that it runs afoul of Supreme Court teachings regarding the parameters for phrasing a new rule for purposes of a collateral proceeding. *See Blackstone*, 903 F.3d at 1026 ("The Supreme Court has repeatedly admonished our court not to advance on its own in determining what rights have been recognized by the Supreme Court under AEDPA.") (citations omitted). We need not consider whether the Seventh Circuit's articulation of the rule is so broad as to restate existing law, rather than announcing a new rule, because Mr. Pullen has espoused a more narrow interpretation of the rule from *Johnson.* We consider Mr. Pullen's phrasing of the new rule now.

## 2. Mr. Pullen's Statement of the Rule

Mr. Pullen argues the proper statement of the new rule from *Johnson* is the right not to be sentenced under an ordinary-case categorical approach that requires the judge to imagine both the conduct necessary to commit the crime and the degree of risk posed by such conduct. Support for Mr. Pullen's interpretation of *Johnson* can be drawn from the dissent in *Welch* and from *Dimaya*. On the former, as pointed out above, the dissent in *Welch* identified the new rule from *Johnson* in a manner similar to the rule stated by Mr. Pullen. *See Welch*, 136 S. Ct. at 1272 (Thomas, J., dissenting) ("*Johnson*'s new constitutional rule is that a law is unconstitutionally

21

vague if it 'requires a court to picture the kind of conduct that the crime involves in "the ordinary case," and to judge whether that abstraction presents a serious potential risk,' of some result." (quoting *Johnson*, 135 S. Ct. at 2557)). With respect to the latter, *Dimaya* read *Johnson* as concluding that a residual clause is unconstitutionally vague if it "'requires a court to picture the kind of conduct that the crime involves in "the ordinary case," and to judge whether that abstraction presents' some not-well-specified-yet-sufficiently-large degree of risk." 138 S. Ct. at 1216 (quoting *Johnson*, 135 S. Ct. at 2556–57). Assuming for the sake of argument that Mr. Pullen is correct regarding the proper phrasing of the new rule from *Johnson*, three considerations defeat his ability to rely on the rule to proceed with a second or successive § 2255 motion challenging the mandatory Guidelines.

First, central to whether Mr. Pullen can rely on any new rule from *Johnson* is whether application of the rule to the mandatory Guidelines is "*dictated* by precedent" and "apparent to all reasonable jurists" as opposed to "susceptible to debate among reasonable minds." *Russo*, 902 F.3d at 883 (quotation marks omitted).[8] Neither *Johnson*, *Welch*, nor *Dimaya* addressed a challenge to a provision of the Guidelines, mandatory or advisory. Instead, the only case to address a *Johnson*-based challenge to the Guidelines is *Beckles*, which concluded the advisory Guidelines were

---

[8] The Eighth Circuit reached this conclusion based on a trio of Supreme Court cases discussing principles governing new rules: *Teague v. Lane*, 489 U.S. 288, 301 (1989), *Chaidez v. United States*, 568 U.S. 342, 347 (2013), and *Butler v. MecKellar*, 494 U.S. 407, 415 (1990). *See Russo v. United States*, 902 F.3d 880, 883 (8th Cir. 2018).

not susceptible to a void for vagueness challenge. 137 S. Ct. at 897. And while the advisory nature of the Guidelines at issue in *Beckles* was undoubtedly important to the Court's holding, the concurrence in *Beckles* indicated that *Johnson*'s applicability to the mandatory Guidelines remained an open question. *See id.* at 903 n.4 (Sotomayor, J. concurring in the judgment) ("The Court's adherence to the formalistic distinction between mandatory and advisory rules at least leaves open the question whether defendants sentenced to terms of imprisonment before our decision in *United States v. Booker* . . . may mount vagueness attacks on their sentences.").[9] If a question remains "open," it is not dictated by precedent. *See Brown*, 868 F.3d at 301 ("[I]f the existence of a right remains an open question as a matter of Supreme Court precedent, then the Supreme Court has not 'recognized' that right."); *Raybon*, 867 F.3d at 630 ("Because it is an open question, it is *not* a 'right' that 'has been newly recognized by the Supreme Court' let alone one that was 'made retroactively applicable to cases on collateral review.'" (quoting 28 U.S.C. § 2255(f)(3))); *see also Blackstone*, 903 F.3d at 1026–27 (relying on open nature of question when affirming denial of § 2255 relief).

Second, central to why the question remains open is that *Johnson* involved a federal statute, while the Guidelines, even in their mandatory form, were agency-

---

[9] Even after *Dimaya*, Justice Sotomayor still believes the question remains open. *See Brown v. United States*, 139 S. Ct. 14, 15 (2018) (Sotomayor, J., dissenting from denial of certiorari) ("But for petitioners like Brown, who were sentenced long before *Johnson*, this Court has thus far left the validity of their sentences an open question. The Court's decision today all but ensures that the question will never be answered." (citation omitted)).

created rules formed by the U.S. Sentencing Commission to supplement existing, congressionally-enacted statutory maximum and minimum sentencing ranges. While the Guidelines established a mandatory range, this mandatory range always fell within the statutory minimum and maximum affixed by Congress. *See* USSG § 5G1.1. Thus, regardless of any vagueness in the mandatory Guidelines, the Supreme Court might conclude the statutory scheme enacted by Congress placed the defendant on fair notice of the possible penalties he faced for committing an offense. *Cf. Beckles*, 137 S. Ct. at 893 ("By specifying 'the *range* of penalties that prosecutors and judges may seek and impose,' Congress ha[s] 'fulfilled its duty.'" (quoting *Batchelder*, 442 U.S. at 126)); *id.* at 894 ("All of the notice required is provided by the applicable statutory range, which establishes the permissible bounds of the court's sentencing discretion.").[10]

Third, where the Guidelines replaced an open-ended sentencing scheme under which judges could impose any sentence within the statutory range, even a somewhat vague residual clause in the Guidelines provided more guidance to sentencing judges than existed prior to the mandatory Guidelines.[11] *See In re Griffin*, 823 F.3d 1350,

---

[10] By concluding that the Supreme Court *might* not strike the residual clause in the mandatory Guidelines as void for vagueness, we do not mean to suggest the Court *will* reach such a result.

[11] Mr. Pullen does not identify any case holding that an open-ended sentencing scheme under which a judge could impose any sentence between a properly announced statutory minimum and statutory maximum failed under the Due Process Clause and the void for vagueness doctrine.

1354–55 (11th Cir. 2016) (per curiam) ("Because there is no constitutional right to sentencing only under guidelines, the limitations the Guidelines place on a judge's discretion cannot violate a defendant's right to due process by reason of being vague. . . . Even vague guidelines cabin discretion more than no guidelines at all.").[12] And, because the Supreme Court has already indicated in *Beckles* that a defendant received fair notice of the broad, but specified, range of penalties he faced under the statutory scheme, 137 S. Ct. at 894–95, and it could reasonably conclude that the sentencing judge's discretion was more cabined with the residual clause in USSG § 4B1.2(a)(2) than in the absence of any Guidelines, the Court might conclude that the two concerns underlying the void for vagueness doctrine are not present in the context of the mandatory Guidelines.

---

[12] To be sure, the Supreme Court could conclude the language of USSG § 4B1.2, within the context of the mandatory Guidelines, did not satisfy due process and void for vagueness considerations. Justice Sotomayor suggested the possibility of such a result within her concurrence in *Beckles*:

> [A] district court's reliance on a vague Guideline [such as U.S.S.G. § 4B1.2] creates serious risk of "arbitrary enforcement." . . . It introduces an unacceptable degree of arbitrariness into sentencing proceedings to begin by applying a rule that is so vague that efforts to interpret it boil down to guesswork and intuition."

137 S. Ct. at 901 (Sotomayor, J., concurring) (citations omitted). The point is that the Supreme Court has not yet answered the question. This is fatal to Mr. Pullen's successive § 2255 motion, especially within in the context of a § 2255(h)(2) analysis where Mr. Pullen must identify a new rule retroactively applicable to his claim for relief.

25

In accord with the second and third reasons discussed above, *Beckles* observed that the Court has "invalidated two kinds of criminal *laws* as 'void for vagueness': laws that *define* criminal offenses and *laws* that *fix the permissible sentences* for criminal offenses." *Id.* at 892 (first and third emphases added). As to the second type of laws, "'*statutes* fixing sentences' must specify the range of available sentences with 'sufficient clarity.'" *Id.* (emphasis added) (first quoting *Johnson*, 135 S. Ct. at 2557, then quoting *United States v. Batchelder*, 442 U.S. 114, 123 (1979)). But, the mandatory Guidelines were not laws or statutes; rather, they merely operated like statutes. Thus, while the Supreme Court might one day conclude, by relying on the actual innocence gateway,[13] that the mandatory Guidelines sufficiently took the form of a law or a statute so as to expose the mandatory Guidelines to a void for vagueness challenge, such a conclusion or rule is (1) debatable and (2) essential to Mr. Pullen's ability to prevail. Accordingly, Mr. Pullen's § 2255 motion is dependent on a rule not yet established by the Supreme Court and, consequently, not made retroactively applicable by the Court.[14] This conclusion provides a sufficient basis to preclude Mr.

---

[13] This circuit does not recognize actual innocence in the sentencing context, except in capital sentences. *See United States v. Denny*, 694 F.3d 1185, 1191 (10th Cir. 2012) ("[A] defendant cannot be actually innocent of a noncapital sentence[.]" (internal quotation marks omitted)). But other circuits do permit such arguments, *see Cristin v. Brennan*, 281 F.3d 404, 421–22 (3d Cir. 2002) (collecting cases), and the Supreme Court has left open the question of whether a prisoner can rely on the actual innocence gateway to challenge a noncapital sentence, *see Dretke v. Haley*, 541 U.S. 386, 393–94 (2004).

[14] The Court could conclude that the mandatory Guidelines, although not statutes, are subject to a void for vagueness challenge and that they do not satisfy due

Pullen from proceeding on his § 2255 motion. *See Blackstone*, 903 F.3d at 1028;

*Russo*, 902 F.3d at 883.

## 3. Summation

Mr. Pullen is not entitled to proceed on his § 2255 motion under his iteration

of the new rule from *Johnson*. Accordingly, the district court correctly concluded Mr.

Pullen failed to actually satisfy the precondition established by § 2255(h)(2) for filing

a second or successive § 2255 motion. This conclusion is consistent with the rulings

of six of our seven sibling circuits, which deny § 2255 relief because *Johnson* either

(1) did not recognize a new right applicable to the mandatory Sentencing Guidelines

for purposes of the requirement in 28 U.S.C. § 2255(f)(3) or (2) did not create a new

rule applicable to the mandatory Sentencing Guidelines for purposes of meeting the

requirements in 28 U.S.C. § 2255(h)(2). *See Blackstone*, 903 F.3d at 1028 (denying

§ 2255 relief under § 2255(f)(3) as *Johnson* did not recognize right as to mandatory

Guidelines); *Russo*, 902 F.3d at 883–84 (same); *Green*, 898 F.3d at 321–33 (same);

*Brown*, 868 F.3d at 301–02 (same); *Raybon*, 867 F.3d at 629–31 (same); *In re*

---

process concerns because they permitted judges to prescribe sentencing ranges arbitrarily. *See Beckles*, 137 S. Ct. at 894-95 (explaining that a vague law which permits judges to prescribe sentencing ranges invites arbitrary enforcement). But, to date, the Supreme Court has not announced a new rule retroactively applicable to the mandatory Guidelines. Nor, as apparent from the denials of certiorari, has the Supreme Court seen fit to take up the issue of *Johnson*'s impact on the mandatory Guidelines. And unless and until it does, Mr. Pullen cannot establish that his successive § 2255 motion actually relies on a new rule for purposes of authorization under § 2255(h)(2).

*Griffin*, 823 F.3d at 1354–56 (denying authorization under § 2255(h)(2) because *Johnson* did not announce new rule applicable to the mandatory Guidelines).[15] *But see Cross*, 892 F.3d at 294.[16] It is also consistent with the Supreme Court's recent denials of certiorari on a series of petitions seeking reversal of the aforementioned circuit decisions. And while denials of certiorari often do not shed light on the merits

[15] Although the Fourth, Sixth and Eleventh Circuits reached their decisions before *Dimaya*, the Sixth and Eleventh Circuits continue to rely respectively upon *Raybon* and *Griffin* after *Dimaya*. *See Robinson v. United States*, 736 F. App'x 599, 599–600 (6th Cir. 2018) (holding *Raybon* had not been overruled by a Supreme Court decision and remained law of the circuit); *Foxx v. United States*, 736 F. App'x 253, 254 (11th Cir. 2018) ("[W]e cannot deviate from *In re Griffin* given the current state of the law, and this forecloses Foxx's appeal."); *Lewis v. United States*, 733 F. App'x 501, 503 (11th Cir. 2018) (concluding *In re Griffin* "remains binding"). It does not appear the Fourth Circuit has revisited the issue since *Dimaya*.

Separately, we observe that while *In re Griffin* involved the denial of authorization for failing to make a prima facie showing under § 2255(h)(2) and 28 U.S.C. § 2244(b)(3), 823 F.3d 1350, 1351, 1354–56 (11th Cir. 2016) (per curiam), Mr. Pullen already passed through the prima facie gate when we granted authorization. Thus, rather than relying on § 2244(b)(3) when dismissing Mr. Pullen's § 2255 motion, the district court correctly relied on § 2244(b)(4) to conclude Mr. Pullen did not satisfy the requirements set forth by § 2255(h)(2).

[16] Mr. Pullen argues the First Circuit, in *Moore v. United States*, 871 F.3d 72 (1st Cir. 2017), reached the same result as the Seventh Circuit. *Moore*, however, involved a preliminary, or prima facie, determination under 28 U.S.C. § 2244(b)(3) that a § 2255 movant could rely on *Johnson* to challenge the mandatory Guidelines and not the conclusion that the second or successive § 2255 motion was actually premised on a new rule of constitutional law made retroactive by the Supreme Court for purposes of the 28 U.S.C. § 2244(b)(4) analysis. *See Moore*, 871 F.3d at 80 ("Having explained the focused yet tentative nature of the examination called for in evaluating a request to file a second or successive § 2255 motion, we turn next to Moore's motion."). Thus, even if other language in *Moore* suggests the panel of the First Circuit would have reached the same conclusion had it been conducting a § 2244(b)(4) analysis, *see id.* at 85, *Moore* does not establish any binding precedent as to the § 2244(b)(4) question.

of an issue, *see United States v. Carver*, 260 U.S. 482, 490 (1923), these denials of certiorari (1) were over a two justice dissent, which expressly states the question is open and not likely to ever be resolved; and (2) the individual defendants are now precluded from filing new and timely § 2255 motions based on *Johnson* should the Supreme Court later adopt the position advanced in their certiorari petitions.[17]

## IV.  CONCLUSION

We conclude *Johnson* did not create a new rule of constitutional law applicable to the mandatory Guidelines because (1) *Beckles* suggests the void for vagueness doctrine's applicability to the mandatory Guidelines remains an open question; (2) the Guidelines, even in their mandatory form, were not statutes; and (3) even a vague provision of the Guidelines provided more guidance to defendants and sentencing judges than did the congressionally-enacted statutory minimum and maximum sentences that provided defendants sufficient due process. Although the Supreme Court might reject all of these considerations and invalidate the residual clause of the mandatory Guidelines, it has not yet done so. Because *Johnson* did not create a new rule of constitutional law applicable to

---

[17] In concluding that, regardless of how the new rule from *Johnson* is phrased, *Johnson* does not create a new rule of constitutional law relative to the mandatory Guidelines, we find it unnecessary to decide whether *Greer*'s statement of the rule from *Johnson* is too narrow in light of *Dimaya*. Rather, it is clear *Greer*'s holding, that *Johnson* does not create a new rule of constitutional law applicable to the mandatory Guidelines, remains good law.

the mandatory Guidelines, the district court properly denied relief and dismissed Mr.

Pullen's § 2255 motion pursuant to § 2255(h)(2). Accordingly, we **AFFIRM**.[18]

---

[18] We **DENY** Mr. Pullen's motion to file a pro se opening brief and his motion to file a pro se supplemental brief.